Gamble-Robinson Commission Company, Appellee, v. Union Pacific Railroad Company, Appellant.

Gen. No. 17,936.

1. CARRIERS—*Carmack amendment to Interstate Commerce Act.* The Carmack amendment to the Interstate Commerce Act does not provide a method by which a contract of shipment may be altered or enlarged with respect to a change of destination.

2. CARRIERS—*effect of Carmack amendment.* By the Carmack amendment, Congress so manifested a purpose to take possession of the subject of the liability of a railway carrier for loss or damage to an interstate shipment as to supersede all state regulations including laws invalidating contracts limiting the carrier's liability.

3. CARRIERS—*action must be brought by one who holds bill of lading.* Under the Carmack amendment an action for loss, damage or injury to property transported from a point in one state to a point in another must be brought by the holder of the bill of lading, and the presumption is that the law was obeyed and a bill of lading issued, the purpose of the act being to protect the one legally entitled to possession of the property carried.

4. BILL OF LADING—*loss of, does not defeat action.* The loss or destruction of a bill of lading does not defeat an action to recover for damage to goods while in transit.

5. CARRIERS—*effect of Carmack amendment.* Under the Carmack amendment, a provision in a bill of lading limiting the liability of the initial carrier to its own negligence is inoperative.

6. CARRIERS—*where ultimate destination of shipment is changed by oral agreement.* Where the initial carrier agrees orally with the shipper while the goods are on its line to change the destination, it is liable under the Carmack amendment for damage the goods may receive in the hands of other carriers before they reach their destination.

7. PLEADING—*in Municipal Court.* In the Municipal Court, where no written pleadings are required, the party suing need not name his action and if misnamed it will not affect his rights if upon hearing the evidence he appears to be entitled to recover and the court has jurisdiction of the defendant and the subject-matter.

8. APPEALS AND ERRORS—*saving questions.* A statement of claim though technically defective, which apprises the defendant of plaintiff's demand as required by section 40 of the Municipal Court Act is regarded as sufficient when questioned for the first time in the court of review.

9. COSTS—*motion to tax cost of depositions.* In an action where depositions are used which were taken in other cases between the

same parties, dismissed on motion of plaintiff, it is proper to deny plaintiff's motion to tax the costs against defendant.

Appeal from the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed May 9, 1913.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This suit was brought by the appellee (plaintiff) against the appellant (defendant) for damages claimed to have been done to the fruit contained in 21 cars transported from Ogden, Utah, to different places in Minnesota, South Dakota and Iowa by the defendant and other railroads whose lines of road connect with it at Omaha, Nebraska, and also one car transported from Ogden to Omaha. As to this latter car the defendant was the only carrier, and the larger part of what will hereafter be said in this opinion will have no bearing upon the case with reference to this one car. The suit was brought against defendant as initial carrier, under what is known as the Carmack amendment to the Interstate Commerce Act of February 4, 1887, the amendment having gone into effect June 29, 1906 (34 Stat. at Large, 584, chap. 3591, U. S. Comp. Stat. Supp. 1911, p. 1288). The particular section of the act upon which this suit is predicated (unless the claim of plaintiff is correct that it is maintainable at common law) is No. 20, and reads as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by

any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

As a basis for the establishment of its case the plaintiff introduced in evidence bills of lading issued by the defendant, acknowledging receipt from the Salt Lake Valley Packing Company as consignor of the different cars, respectively. In some instances the plaintiff was designated as consignee, in others "H. D. Foy, Agt." In all instances the destination fixed by the bills of lading was Omaha, Nebraska. The rate of freight is not mentioned. They are signed by the defendant, by its agent, and by the "Salt Lake Valley Packing Company, by E. L. Robinson, shipper," and directions as to icing the cars, etc., appear in each instance. It seems to be undisputed that the plaintiff at the time of beginning the suit was the lawful holder of the bills of lading.

The contention of the plaintiff is that prior to the arrival of the cars at the destination fixed by the bills of lading, namely, Omaha, Nebraska, an oral contract was entered into between it and the defendant for a "diversion" (as it is termed) of the cars to Minneapolis, St. Paul and other places in Minnesota, Aberdeen, South Dakota, New Hampton, Iowa, etc. The

proof in this respect is largely confined to the testimony of David F. Gamble, an officer of the plaintiff, who on his direct examination stated that he had to do with the change of destination of the cars covered by the bills of lading; that he generally did it through telephone conversation with Mr. D. M. Collins, the agent of the Union Pacific Railroad Company at Minneapolis; that "this was usually the same day—sometimes the following day or not more than three days after the receipt of the bill of lading." In his testimony he then proceeds to take up the cars, one by one, as mentioned in the statement of claim, and in respect to practically all of them says that he called up Mr. Collins on the telephone and requested him to forward the car on the original bill of lading to Minneapolis or some other point, "through rating to apply;" that he surrendered the bill of lading in each instance to Mr. Collins, and that Mr. Collins promised to divert the car; that he gave Mr. Collins the routing from Omaha to the different points to which he asked him to divert and deliver the cars; that the bills of lading were returned to him.

Mr. D. M. Collins, for the defendant, testified that he was district freight agent for the defendant at Minneapolis; that he was acquainted with David Gamble; that he never received any request from Mr. Gamble to change the destination of any cars in transit and, *seriatim*, he denied that Mr. Gamble called him up on the telephone and asked him to change the destination of the different cars in question. He further testified that he kept in his office a record in relation to requests for changes in destination of cars in transit; that copies of all telegrams sent about them and any memoranda made at the time were kept, and that there was no one in his office excepting J. E. Collins and himself who had anything to do with handling matters of this kind. On cross-examination he stated that prior to August, 1907, diversions requested by the

260 · Appellate Courts of Illinois. .

Gamble-Robinson Com. Co. v. Union Pac. R. Co., 180 Ill. App. 256.

Gamble-Robinson Commission Company were wired to W. H. Hancock, freight agent, direct; that since then plaintiff called up office of witness and asked his clerk to divert the car or have Mr. Hancock change the car, and that he, the clerk, would wire Mr. Hancock, saving plaintiff the trouble and expense; that he himself did not do this work but that his son, J. E. Collins, who was chief clerk at the time, had full authority.

J. E. Collins testified that in September, 1907, he was chief clerk in the district freight and passenger office of the defendant at Minneapolis; that at the request of Mr. Gamble he changed the destination of four cars; that in each instance the request was followed by a written confirmation; that there were no requests for a change of destination of cars of which there was not a record in the office; that he had looked through the records in the office and searched carefully for all the diversion records and that there were no other records relative to the cars about which Mr. D. M. Collins was questioned except the four to which reference has been made; that neither Mr. Gamble nor any one for plaintiff requested him to have changed the destination of other cars, and that the only cars upon which the request was made that the destination be changed were the four cars heretofore referred to. On cross-examination he testified that the defendant required those who wanted to divert cars to show some evidence of their interest in the property; that it was customary when the destination of cars was changed to have the bills of lading produced or surrendered.

On rebuttal Mr. Gamble testified that no one had anything to do with the diversion of fruit for his company in September, 1907, but himself; that he never attempted to change the destination of any of these shipments through any other agency or office than "these gentlemen at Minneapolis;" that the diversions were all done through Mr. Collins' office, and that many times Mr. Collins would come to this office to see

some of the bills of lading; that the Union Pacific Railroad Company had no other office or agency at Minneapolis or St. Paul through whom diversions were made at that time.

The four orders confirming the diversion of the four cars heretofore referred to were placed in evidence. Mr. Gamble testified that he gave a written confirmation of the oral order of diversion in each case, but did not produce copies of them. The record does not disclose the rate of freight charged from Omaha to the different points in the three states mentioned. Mr. Gamble testified that the through rate from Ogden to the various points was applied, but no written evidence was offered as to the amount of freight paid. It would appear that the through rate was less than the sum of the locals. If, therefore, the amount of the freight paid had been disclosed, and the freight rate between Ogden and Omaha and the local freight rate between Omaha and the ultimate destinations had been shown, the evidence would have been helpful in determining the question at issue. There would have been additional proof of the "oneness of charge" and "singleness of rate." *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186.

Under section 20 of the Act of 1906 amending the Interstate Commerce Law, the initial carrier (in this instance the defendant) is required to issue a receipt or bill of lading for the property received by it for transportation from a point in one state to a point in another state, and the holder of such bill of lading may recover against the initial carrier for any loss, damage or injury to such property caused by it or any common carrier, etc., to which such property may be delivered or over whose line or lines such property may pass in pursuance of the contract created by the receipt or bill of lading and the delivery to the initial carrier for shipment. The act does not provide a method by which the contract may be altered or enlarged with respect to a change of destination.

In the case before us the measure of damages was fixed at the difference between what it is claimed the fruit was worth in the condition in which it was received at the ultimate destinations, namely, Minneapolis, St. Paul, etc., and what it would have been worth if it had been received within a reasonable time from the time of its departure from Ogden, and the cars had been properly iced and the fruit otherwise properly taken care of during its transportation. A recovery, therefore, is not justifiable against the defendant as initial carrier unless it be shown that a contract was entered into by it for the transportation of the fruit from Ogden to the several destinations. If the fruit in the twenty-one cars had been delivered at Omaha and was found to be in a bad condition, and this condition was brought about by the negligence of the defendant, the measure of damages would of course be based upon entirely different conditions.

In the case of *Adams Exp. Co. v. Croninger,* 226 U. S. 491, the Federal Supreme Court, in an opinion by Mr. Justice Lurton, exhaustively discusses the question as to the effect of the Carmack amendment and other amendments to the Interstate Commerce Law. In our judgment this opinion, which was filed January 6, 1913, renders nugatory as authority many cases in our Supreme Court and the courts of last resort in other states, among others *Nonotuck Silk Co. v. Adams Exp. Co.,* 256 Ill. 66, which was decided in October, 1912, and *Plaff v. Pacific Exp. Co.,* 251 Ill. 243. Referring to the Carmack amendment, Mr. Justice Lurton, speaking for the court, says:

"Prior to that amendment, the rule of carriers' liability, for an interstate shipment of property, as enforced in both Federal and state courts, was either that of the general common law, as declared by this court and enforced in the Federal courts throughout the United States (*Hart v. Pennsylvania R. Co.,* 112 U. S. 331), or that determined by the supposed public policy of a particular state (*Pennsylvania R. Co. v. Hughes,*

191 U. S. 477), or that prescribed by statute law of a particular state (*Chicago, M. & St. P. R. Co. v. Solan,* 169 U. S. 133).

"Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject."

After quoting with approval the language of the Supreme Court of Georgia depicting the situation in the matter, the court proceeds: "To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject. * * * To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

In later cases it has been held by the U. S. Supreme Court that Congress has so manifested a purpose in the Carmack amendment to take possession of the subject of the liability of a railway carrier for loss or dam-

age to an interstate shipment as to supersede all state regulation upon the same subject, including the provisions of state constitutions or laws invalidating contracts limiting the carrier's liability. *Chicago, St. P., M. & O. R. Co. v. Latta,* 226 U. S. 519; *Chicago, B. & Q. R. Co. v. Miller,* 226 U. S. 513; *Fry v. Southern Pac. Co.,* 247 Ill. 564.

We think it follows from these authorities that the law respecting the duties and responsibilities of common carriers of interstate shipments is now to be found wholly in the acts of Congress as construed by the Federal Supreme Court. We are further of the opinion that by reason of the Carmack amendment, suits for any loss, damage or injury to property transported from a point in one state to a point in another must be brought by the holder of the bill of lading, and the presumption is to be indulged in that the law was obeyed and a bill of lading issued. We do not wish to be understood as meaning that the person bringing the suit may not recover without production of the bill of lading, if the non-production can be accounted for, as for instance that the bill of lading has been lost or destroyed. The evident purpose of the act is to protect the one legally entitled to the possession of the property carried, whether it be the consignor, consignee or owner (who is neither consignor nor consignee), or one with whom the bill of lading has been hypothecated. The design of the statute also is to afford protection to the common carrier against having to pay more than once for any loss or damage for which it may be responsible.

The necessity of an act of Congress to make uniform the law respecting interstate shipments is well illustrated by the case before us, because the bills of lading contain a provision (now made inoperative by the provisions of the act) which in terms limits the liability of the initial carrier to its own negligence, and such a provision has been variously construed by the courts of the different states and the Federal courts. The

rule of the initial carrier's liability, as similar provisions have been construed by the Federal Supreme Court, under the general common law, would preclude recovery. Recovery, therefore, if had in the case before us must be under the statute and not under the common law.

We come now to the question in the present case as to whether or not the proof warrants the conclusion that by agreement of the parties the ultimate destinations of the many cars of fruit involved in this proceeding were changed by the parties to the suit by an oral contract and in such manner as to render the defendant, as the initial carrier, responsible for the damages claimed to have resulted to the shipments.

It is undisputed that the cars reached their ultimate destinations, and the evidence of Mr. Gamble, received so far as the abstract shows without objection, was that the through rate was applied; that no diversion was made through any other office than that of the defendant company in Minneapolis. The evidence as to when the diversion was made as to each particular car is not entirely harmonious, but we cannot say that the finding of the jury that this was done before the arrival at Omaha or before it was incumbent upon the defendant to take possession of the fruit is against the weight of the testimony so far at least as many of the cars are concerned.

It is argued that all the evidence offered in regard to the condition of the fruit at the ultimate destinations and as to the market value was improperly received. The abstract of record shows that very few objections were raised. Our attention has been called to certain testimony which had to do with one particular car. The amount of damages claimed in the statement was slightly more than $10,000; the amount of the recovery was $4,500. We have carefully read the record and are unable to say that there was not sufficient evidence unobjected to to sustain the verdict in the amount. At

the close of all the testimony a motion was made to "strike from the record all of the testimony as to the condition and market value of car 'P. F. E. 5866' '', and fourteen others of which the numbers and initials are given. It does not appear either from the abstract or the record itself that any reasons were assigned for striking from the record this testimony. The bill of exceptions contains a colloquy between court and counsel and also certain argument between counsel, all apparently directed to a motion then made to direct a verdict in favor of the defendant.

It is argued that there can be no recovery because the statement of claim does not present a cause of action under the Carmack amendment. The recital is "Plaintiff's claim is for money damages incurred to, to-wit, 1,180 boxes of, to-wit, peaches, etc. shipped from, to-wit, Ogden, Utah, on, to-wit, September 5, 1907, via. said defendant to, to-wit, said plaintiff at, to-wit, Minneapolis, Minnesota, arriving thereat, on, to-wit, September 13, 1907; incurred by reason of the failure of said defendant to exercise the care required of it said, to-wit, fruit while in its possession, custody and control, and further on account of the unreasonable delay of said defendant to furnish sufficient and adequate equipment at the initial point of transit thereof for the transit thereof, and further by reason of the unreasonable delay in the transportation thereof, and on account of the failure of said defendant to furnish sufficient and adequate equipment for said transit to, to-wit, 1,180 boxes of, to-wit, peaches, the property of said plaintiff;   *   *   *'' and similar allegations as to other cars.

No demand was made for a more specific statement of claim and no motion was made to strike the statement from the record on the ground that it did not state a cause of action. On the other hand the defendant interposed the defenses, first, that the plaintiff was a corporation organized and existing under the laws of some other state than Illinois, and was doing

business in Illinois in violation of the statute as to filing articles of incorporation; second, that the defendant did not fail and refuse to furnish sufficient and adequate equipment nor delay in furnishing same, and that it exercised due care in handling the property of plaintiff, and that there was no delay in the delivery of the same. An additional affidavit of defense was filed setting forth "that the property alleged to have been shipped via. defendant in plaintiff's statement of claim described was not the property of plaintiff nor was it shipped via defendant to the different points alleged in plaintiff's statement of claim."

Defendant bases its contention upon the case of *Walter Cabinet Co. v. Russell*, 250 Ill. 416, in which the court held that "while the formalities of pleading have been abolished by statute, it is still the law in the municipal court, as in other courts, that a party is limited, in his evidence, to the claim he has made; that he cannot make one claim in his statement and recover upon proof of another without amendment. The issue is made by the statement of claim, and the evidence must be limited by that statement."

In the case of *Edgerton v. Chicago, R. I. & P. R. Co.*, 240 Ill. 311, it was held that in cases in the Municipal Court where no written pleadings are required the same rule will govern as controls the form of action before justices of the peace, and that in such action the party suing need not even name his action, or if misnamed that it will not affect his rights, if upon hearing the evidence he appears to be entitled to recover and the court has jurisdiction of the defendant and of the subject-matter of the litigation.

No interrogatories were propounded to the plaintiff, as is permitted under the Municipal Court Act. The affidavit of defense having been filed, the situation is similar to that shown in many decided cases wherein the common-law pleadings were used. The defect in pleading, if it were one, was waived. *Illinois Steel Co. v. Hanson*, 195 Ill. 106.

The statement of claim, even if technically defective, apprised the defendant of the plaintiff's demand as required by section 40 of the Municipal Court Act, and after judgment must be regarded as sufficient. This point in the case apparently is raised in this court for the first time.

The plaintiff has filed cross-errors on the refusal of the court to tax the costs of depositions taken in certain cases between the parties hereto, which cases were dismissed by the plaintiff. It is alleged that the subject-matter of these five or six suits was the same as the subject-matter of the present suit and that the depositions were by consent used by the parties in the present suit. A motion to retax the costs was made in the Municipal Court after the appeal to this court had been perfected. We do not think the order entered was erroneous.

The judgment will be affirmed.

*Affirmed.*