22 N.J. Super. 578 (1952)
92 A.2d 501
VALCO MANUFACTURING COMPANY, A BODY CORPORATE, PLAINTIFF-APPELLANT,
v.
C. RICKARD & SONS. INC., A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 14, 1952.
*581 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. David Cohn argued the cause for plaintiff-appellant.
Mr. Lawrence B. Raff argued the cause for defendant-respondent (Messrs. Raff & Sherman, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
Appellant sued on account of damage alleged to have been sustained to its goods while being transported by respondent, a common carrier. This appeal followed a jury verdict in favor of respondent.
Several alleged trial errors are raised as grounds for reversal. However, respondent contends that even if errors were committed appellant suffered no harm because on at least one phase of the action, to which all others were subordinate, the trial court should have taken the case from the jury and granted the motion for judgment in its favor.
The record shows that two separate series of shipments were involved in the dispute between the parties. The first series concerned 25 shipments of certain aluminum caps from New York to Fairfield, Connecticut; the second series concerned an unstated number of shipments of such caps from Fairfield to a consignee in New York, which was a customer of appellant. The complaint charges that respondent caused damage to certain of the caps on the trips to Fairfield, and damage to another quantity thereof on the return trips to New York. In determining the case, each operation, one to Fairfield, and the other back to New York, requires individual consideration.
The appellant manufactured small aluminum caps on which it desired to have certain processing work done by a concern known as Aristol, Inc. in Fairfield, Connecticut; upon completion of the work there the caps were to be sent *582 by Aristol, Inc. to a customer of plaintiff's in New York City.
Many thousands of caps were involved in the shipments to Aristol, Inc. and their interstate transportation by defendant as a motor carrier for hire under certain bills of lading which named Aristol, Inc. as consignee, was conceded. The nature of the case is such that in dealing with the carriage and delivery to Aristol, Inc., specific mention must be made of the dates of shipment by Valco and receipt by Aristol. The dates follow:

 Date of shipment, as shown Date of delivery
 on each bill of lading.
 1. May 14, 1951 May 15, 1951
 2. " 15, " " 16, "
 3. " 16, " " 17, "
 4. " 17, " " 18, "
 5. " 21, " " 21, "
 6. " 23, " " 23, "
 7. " 24, " " 24, "
 8. " 25, " " 25, "
 9. " 28, " " 28, "
 10. " 29, " " 31, "
 11. " 31, " June 4, "
 12. June 4, " " 4, "
 13. " 5, " " 7, "
 14. " 6, " " 7, "
 15. " 7, " " 11, "
 16. " 11, " " 12, "
 17. " 12, " " 14, "
 18. " 13, " " 15, "
 19. " 15, " " 15, "
 20. " 18, " " 19, "
 21. " 19, " " 20, "
 22. " 19, " " 21, "
 23. " 20, " " 21, "
 24. " 22, " " 25, "
 25. " 26, " " 27, "

The testimony discloses that on June 14, during the course of the 25 carriages, Andrew Serin, the superintendent of Valco, in response to a telephone call from Aristol, Inc., went to its place of business in Fairfield to inspect the caps. As indicated above, at this time, excluding the one on June *583 14, there had been 16 deliveries to Aristol by respondent. The record is barren of proof that prior to this date any complaint had been made to respondent or to Valco by the consignee of the discovery of damage to a single shipment upon delivery. And down to this time 46 barrels and 75 cartons had been delivered containing a total of 486,750 caps. In any event, Serin said his inspection revealed 12,000 damaged caps.
No testimony was offered as to where the inspection was made, that is, whether it was in a storage room or on a delivery platform or in the plant itself. Nor was it shown that the caps were still in the original containers or that the containers were damaged. It did not appear where either the containers or the caps had been kept after delivery or what handling they received at Aristol, Inc. following delivery. No effort was made to establish what particular shipment the damaged goods came from or that some of them came from each consignment. No person associated with the consignee was called to give testimony as to the condition of any one or all of the containers or goods upon each delivery.
Despite this discovery by Serin, neither he nor anyone connected with the shipper or the consignee communicated with the carrier. The shipments continued until eight more deliveries, totaling 115 cartons containing 258,750 caps, had been accomplished. Then on June 26, again in response to a telephone call Serin revisited the Aristol plant and inspected caps. This time he asserted he found 36,000 damaged ones. But again no proof appears which would throw light upon the condition of any of the cartons at the time of delivery.
The last consignment of 13 cartons containing 29,250 caps was delivered to Aristol, Inc. on June 27. However, Serin did not stay in Fairfield and wait for it, nor did he or anyone inform the carrier on June 26 of the damage that had been discovered. The first notice to respondent of any kind was given on June 29.
*584 It is undisputed in the case that respondent was acting as an interstate common carrier and therefore was subject to the provisions of 49 U.S.C.A., sec. 20 (11). Consequently in order to make out a case the burden imposed on plaintiff was simply to show: (1) that the goods in question were delivered to the carrier in good condition, (2) that the shipment arrived at its destination in damaged condition, and (3) the amount of the loss. N.J. Bell Tel. Co. v. Pennsylvania-Reading Seashore Lines, 11 N.J. Super. 129 (Law Div. 1950).
From the facts detailed manifestly there is an utter absence of proof of the state of the various shipments covered by the individual contracts of carriage on arrival at their destination. Nor are there any facts from which an inference can be drawn that damage occurred while the caps were in the possession and control of respondent. No person who was present at any of the deliveries was produced to give testimony as to the condition at the time.
The law does not permit speculation or conjecture on this subject. The right of the carrier to have the shipper establish the elements which form the basis of liability is a fundamental one. The absence here of proof of the element of delivery in damaged condition stands as a barrier to recovery. Consequently respondent's motion for dismissal of the action, so far as it related to the shipments covered by the first count of the complaint, should have been granted.
This determination makes it unnecessary to consider the grounds of appeal urged by appellant which concern the twenty-five outgoing transactions. None of them relates to the basic proof deficiency which required dismissal of appellant's action; the duty of the trial court to dismiss was not affected by any rejection or admission of evidence which is the subject of the appeal or by any statements in the charge to the jury.
In connection with the portion of the trial dealing with the return shipments from Aristol, Inc. in Fairfield to New *585 York, our study of the record has convinced us that the trial court erred.
The proof shows that a number of return shipments were made; the exact number does not appear. Respondent as an interstate common carrier was duty-bound to issue bills of lading covering them in conformity with the Interstate Commerce Act, 49 U.S.C.A., sec. 20 (11), and this was done. Such a bill of lading is in form and essence a contract when issued, and constitutes an agreement between the shipper and carrier regulating and defining their respective rights and liabilities. Spada v. Pennsylvania Railroad Co., 86 N.J.L. 187, 190 (E. & A. 1914); Boston, etc., Railroad Co. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914).
The named parties to the bills of lading were Aristol, Inc. and respondent. Because of this fact the trial court refused to recognize any right of action in the appellant for damage occurring during the transportation to New York. He declared that since appellant was not a party to the bills of lading, it had no right to sue thereon.
This view overlooked the following provisions of 49 U.S.C.A., sec. 20 (11), which have been held to require a liberal construction, Olivit Bros. v. Pennsylvania R. Co., 88 N.J.L. 376 (E. & A. 1916); Pennsylvania R. Co. v. Olivit Bros., 243 U.S. 574, 37 S.Ct. 468, 61 L.Ed. 908 (1917):
"Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * *; and any such common carrier * * * delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not * * *."
Thus appellant's right to sue on the contract of carriage does not depend upon its position as a party thereto. If it *586 is a lawful holder thereof or entitled to recover thereon the action may be maintained.
It is not clear from the record who now holds the bills of lading. If appellant has possession the presumption exists that it is the lawful holder within the statute, Farmers Grain Co. v. Illinois Central Railroad Co., 201 Ill. App. 261 (App. Ct. 1916); Davis v. Wylie & Jackson, 256 S.W. 256 (Tex. Com. App. 1923), affirming 241 S.W. 1114 (Tex. Civ. App. 1923), and so entitled to bring the action. Moreover, "lawful holder" comprehends the owner of the property to be transported or the one beneficially entitled to recover for the loss or injury, and manual possession of the bill of lading is not a prerequisite to the right to sue. Aspen Fish Products Co. v. Penn-Reading Seashore Lines, 127 N.J.L. 209 (E. & A. 1941); Pecos, etc., Ry. Co. v. Meyer, 155 S.W. 309 (Tex. Civ. App. 1913); Aultman v. Atlantic Coast Line Railroad Co., 71 Fla. 276, 71 So. 283 (Sup. Ct. 1916); Norfolk Southern Railroad Co. v. Norfolk Truckers' Exchange, Inc., 118 Va. 650, 88 S.E. 318 (Sup. Ct. 1916).
Appellant's ownership of the goods was accepted as a fact by the court and opposing counsel in the discussion of the matter. Further, the evidence was open to the conclusion that in arranging for the shipping Aristol, Inc. was acting as agent for appellant, its undisclosed principal. However, these facts were considered of no legal consequence because of the absence of status as a party to the bills of lading.
In our judgment appellant should have been permitted to establish fully that it was the lawful holder of the bills of lading or, as owner of the goods and the person beneficially interested in the contracts of carriage, that it was entitled to recover thereon. Accordingly the dismissal of the action as to the two counts of the complaint involving these transactions cannot be sustained.
Respondent argues that no proof was offered or received to show the condition of the caps at the point of origin, or at the time of delivery in New York. The efforts of appellant in this direction were abortive because of the position taken *587 by the court as to the nature of the contracts of carriage. In fact, when the motion for dismissal was made on these grounds the court said: "Of course, you want to remember a good deal of that is because I refused to permit it."
Under all the circumstances justice requires a retrial of the full issue presented on these two counts of the complaint.
For these reasons the judgment based on the verdict of the jury is affirmed, and the dismissal of the action as to the second and third counts of the complaint so far as they relate to the shipments from Aristol, Inc. to New York, is reversed. As to these counts and the shipments referred to, a new trial is ordered.
No costs are allowed to either party.