## THOMPSON v. AMERICAN ABRASIVE METALS CO.
### No. 12474.

Court of Civil Appeals of Texas. Galveston.
Nov. 20, 1952.

Rehearing Denied Dec. 11, 1952.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren and Howard S. Hoover, all of Houston, for appellant.

Vinson, Elkins & Weems and Leroy Jeffers, of Houston, for appellee.

GRAVES, Justice.

Appellee placed 480 kits of liquid paint with Morgain Forwarding Company, "a freight-forwarder", for shipment from Newark, New Jersey, to Texas. The paint was delivered to the "freight-forwarder" in good condition, and properly prepared for shipment. The "freight-forwarder" consolidated appellee's shipment, which was less than a carload lot, with other shipments, to make up a carload lot of mixed merchandise.

The "freight-forwarder" then placed the carload lot of mixed merchandise with the Baltimore and Ohio Railroad Company for shipment, the paint being delivered to it in good condition, and properly prepared for shipment.

The Baltimore and Ohio Railroad Company issued its Uniform Straight Bill-of-Lading to the "freight-forwarder." The bill-of-lading contained no agreed, or declared, value of appellee's paint, or of the entire carload of mixed merchandise. The bill-of-lading provided that the carrier thereunder should be liable,—as at common law—for any loss or damage to the shipment, except the carrier should not be liable for any loss, or damage, caused by the act of God, the public enemy, the authority-of-law, or the act or default of the shipper, or owner, or for natural shrinkage.

The bill-of-lading contained no other limitation of the carrier's liability pertinent, under the facts of the case.

Either the initial-carrier, or a subsequent connecting common carrier by railroad, delivered the carload shipment, including appellee's paint, to appellant, in good condition and properly prepared for shipment, at or near Longview Junction, Texas, and appellant transported the goods from there to Houston, Texas.

Plaintiff's kits of paint were damaged during transportation on appellant's line. The damage was not the result of any negligence, or default, on the part of appellee, or the "freight-forwarder", by reason of any defect in the goods, by reason of the inherent nature of the goods, or by any act of God, of the public enemy, or of public authorities. Appellees sustained damage in the amount of $6,434.38.

Claim for the damage was duly and timely filed with appellant, and payment was refused.

The cause was tried before the court, on an agreed stipulation of facts. The court rendered judgment for appellee, against appellant, for the sum of $6,434.38.

The trustee (that is, as affects this cause, he was trustee for the International-Great Northern Railroad Company only, against which the trial court's stated judgment ran) appeals, presenting here 6 detailed Points of Error, which will be considered together, since appellant, himself, thus, does likewise, in his brief: All of appellant's points may be reduced to the basic question of whether, under the provisions of Part IV of the Interstate Commerce Act, 49 U.S.C.A. § 1001 et seq., commonly known as the Freight-Forwarders Act, passed by Congress in 1942, a less than carload shipper, who holds a bill of lading from a freight-forwarder, whereby the forwarder agrees to cause said merchandise to be transported and delivered to a given destination, can recover directly from the underlying rail carrier for loss or damage to said merchandise, while the same is a part of a carload shipment made up of a number of individual less-than-carload shipments, and covered by a single railroad bill of lading, issued in favor of forwarder, as shipper, and showing the forwarder to be both consignor and consignee.

Appellant's detailed position and argument is that no such right of action lay under Part IV of the Interstate Commerce Act, 49 U.S.C.A. § 1001 et seq., commonly known as the Freight-Forwarders Act, passed by Congress in 1942, as applied to the exact circumstances under which this shipment was made.

His boiled-down position is that prior to the passage of such act, one who occupied the position toward the owner of "freight-forwarder" in this instance, such shipper could recover directly from the carrier. Citing, among others, these authorities: New Jersey Steam Navigation Co. v. Merchants' Bank, 1848, 6 How. 344, 379, 381, 12

L.Ed. 465; Great Northern Railway Co. v. O'Connor, 232 U.S. 508, 509, 34 S.Ct. 380, 58 L.Ed 703; and Chicago, M. St. P. & Pac. R. Co. v. Acme Fast Freight, 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817.

He further urges however, that since the most recent decision of the United States Supreme Court, pertaining to such Freight-Forwarders Act, that is, that in Chicago, M. St. P. & Pac. R. Co. v. Acme Fast Freight, supra, no such direct recovery may longer be had.

In other words, his position is that the Supreme Court, in the Acme case, to quote his own language, "distinguishes forwarders under the Act from those which formerly contracted as mere agents of the shipper by reason of which relationship shippers were theretofore permitted to recover directly against the railroads. See Merchants Bank and O'Connor cases, supra. 336 U.S. at pages 484–485, 69 S.Ct. at page 701, of the opinion in the Acme case." His further statement of such position is, thus, detailed at pages 10 and 11 of his brief:

"Thus it is that the type of 'freight-forwarder' encompassed by the Freight Forwarder Act does not act as the mere agent of the shipper, as under the early decisions, but as an independent contractor, or principal. When the Morgain Forwarding Company, in the case at bar, contracted with the Baltimore & Ohio Railroad Company for shipment of a carload lot of mixed merchandise to Houston, Texas, it did so not as an agent of the several unnamed and undisclosed less-than-carload shippers, including appellee in this case, but as a principal."

The appellee, on the other hand, thus states his opposing position,—that the trial court's judgment was correct—in these two counterpoints:

"I.

"A shipper, through a 'freight-forwarder', may recover from a common carrier damaging the shipment, under the terms of the bill of lading issued to the 'freight-forwarder', as an undisclosed principal to such bill of lading.

"II.

"The goods having been delivered to appellant in good condition and properly prepared for shipment, and having been damaged in the course of their shipment by appellant, appellee was entitled to judgment against appellant for the full damages sustained by appellee, since the bill of lading issued to the 'freight-forwarder' contained no declaration of value, or agreed value, or other applicable limitations on liability."

Under these presentments, the appellee urges that an owner's right to ship his goods through a "freight-forwarder" to recover directly against the carrier with whom the "freight-forwarder" has placed the goods, for loss of, or damage to the goods, has been recognized by the Supreme Court of the United States on an undisclosed principal or agency theory, since the year 1848, when that Court handed down its decision in the case of New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L.Ed. 465; indeed, he urges that such last-cited opinion of the United States Supreme Court recognized that such a recovery was available to the owner of such goods "either on the contract entered into between the 'freight-forwarder' and the carrier, or, in a tort action, by the owner of the goods against the carrier for negligently damaging the same." In support of that position, he cites Great Northern Railway Company v. O'Connor, supra.

In the case at bar, no declared value, or agreed value, was placed on the shipment in the bill of lading issued by the carrier to the "freight-forwarder." Accordingly, under the holding in Great Northern Railway Company v. O'Connor, supra, the appellee was entitled to recover the full amount of damages sustained. In this connection, appellee differs widely from the appellant's construction of the holding of the U. S. Supreme Court in the cited Acme Fast Freight, Inc. case, using this language:

"The United States Supreme Court, on the contrary, has clearly recognized that such a shipper, through a freight-forwarder, can recover directly against

86

the carrier as an undisclosed principal to the bill of lading issued to the freight-forwarder by the carrier. In the Acme Fast Freight case, at 336 U.S. 486, 69 S.Ct. 703, 93 L.Ed. 830, in Footnote 27, the Court said, in part:

" 'Of course, shippers by freight-forwarder have for many years been permitted to sue underlying carriers for loss, or damage, occasioned by the latter. New Jersey Steam Nav. Co. v. Merchants' Bank, 1848, 6 How. 344, 12 L.Ed. 465, Great Northern R. Co. v. O'Connor, 232 U.S. 508, 509, 34 S.Ct. 380, 58 L.Ed. 703, 1914. The Theory of these actions was that the shipper is the undisclosed principal of its agent, the forwarder, in the latter's contract with the carrier. The forwarder, as agent of an undisclosed principal, could, of course, sue on the contract. Merchant Shippers Ass'n v. Kellogg Express & Drayage [Draying] Co., 28 Cal.2d 594, 170 P.2d 923. See Bunge, Law of Draymen, Freight Forwarders and Warehousemen, p. 117. See also Restatement of Agency, §§ 322, 364.' "

He further points out, however, in that connection that, while under the Acme Fast Freight case the shipper has no independent tort action for negligence against the carrier transporting the goods under the bill of lading issued to a "freight-forwarder," he did have a right of action, however, on the bill of lading. He ends his argument upon that contrary construction with this conclusion: "Therefore, appellee, in the present case, could maintain an action upon the bill of lading issued to Morgain Forwarding Company, the freight-forwarder, directly against the appellant-carrier, who damaged appellee's paint while transporting it under such bill of lading."

This Court concludes that the trial court properly construed the appellee's right, and that no successful attack has been made by appellant upon the amount of the judgment so rendered in his favor. These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.