(No. 38291—

Ted Mirski, Appellee, *v.* The Chesapeake and Ohio Railway Company, Appellant.

*Opinion filed Sept. 29, 1964.—Modified on denial of rehearing November 23, 1964.*

Gardner, Carton, Douglas & Chilgren, of Chicago, (Joseph P. Carr and John K. Notz, Jr., of counsel.) for appellant.

H. HASKELL LURIE and MARTIN F. HAUSELMAN, both of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an action to recover for alleged damage to a carload of cherries shipped from Yakima, Washington, to Cincinnati, Ohio. After a trial without a jury, judgment was entered for the plaintiff in the sum of $3,250, which was the approximate difference between the plaintiff's cost price and his selling price. The appellate court affirmed, (44 Ill. App. 2d 48) and we allowed the defendant's petition for leave to appeal. The defendant argues that the plaintiff failed to prove that the cherries were delivered to the initial carrier in good condition, and that an improper measure of damages was applied. The plaintiff contends that the damages allowed were insufficient and requests that judgment be entered in his favor in the sum of $4871.65.

The plaintiff, Ted Mirski, purchased 1,715 boxes of Bing and Lambert cherries in Yakima, Washington, for $8,333.50. On July 5, 1957, they were shipped to Chicago. At the plaintiff's direction the shipment was diverted to Cincinnati and it arrived there aboard the defendant carrier, The Chesapeake and Ohio Railway Company, at 9:40 P.M. on Friday, July 12, 1957. It is not contended that there was any undue delay in transportation. The car was opened on Monday, July 15, and the cherries allegedly were found to be in a state of decay. The shipment was sold at auction on July 15 and 17 for $5,169.10.

In this court the issues are whether the plaintiff established a *prima facie* case of liability which the defendant failed to rebut and, if so, whether the trial court applied an appropriate measure of damages. The liability of a common carrier delivering property received for interstate shipment is governed by the Carmack Amendment to the Interstate Commerce Act, which makes the delivering car-

rier liable "for the full actual loss, damage, or injury" which it or any connecting carrier causes to the property. (49 U.S.C. sec. 20 (11).) This provision codifies the common law rule that a carrier is liable "for all damage to the goods transported by it, unless it affirmatively shows that the damage was occasioned by the shipper, acts of God, the public enemy, public authority or the inherent vice or nature of the commodity." (*Secretary of Agriculture* v. *United States,* 350 U.S. 162, 165, 100 L. ed. 173; *Galveston, Harrisburg & San Antonio Railway Co.* v. *Wallace,* 223 U.S. 481, 56 L. ed. 516.) A shipper establishes a *prima facie* case by showing "delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition." *Chesapeake and Ohio Railway Co.* v. *Thompson Mfg. Co.* 270 U.S. 416, 422, 70 L. ed. 659; *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.* (7th Cir. 1963), 313 F.2d 864; *Thompson* v. *James G. McCarrick Co.* (5th Cir. 1953), 205 F.2d 897.

The defendant does not challenge these general principles, but it contends that in cases involving perishable commodities the shipper has the burden of proving that decay was not due to inherent vice or the natural tendency of the goods to spoil. This exact issue was recently resolved adversely to the defendant's contention in *Missouri Pacific Railroad Co.* v. *Elmore & Stahl,* 377 U.S. 134, 12 L. ed. 2d 194. In that case a jury had found specially that a carload of honeydew melons was delivered to a carrier in good condition and arrived at its destination in damaged condition. It also found specially that the damage was not due solely to inherent vice and that the carriers had complied with the shipper's instructions and had performed all required services without negligence. The Supreme Court held that upon these findings the defendant carrier was liable since it had not proved that the damage was occasioned by one of the excepted causes. The Court expressly rejected the view that a different burden of persuasion ap-

plies to perishables. It ruled that once the shipper establishes a *prima facie* case "the burden of proof is upon the carrier to show both its freedom from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." 377 U.S. at 138.

To prove the defendant's liability, the plaintiff introduced evidence of the condition of the cherries immediately before and after shipment. The appellate court in affirming the judgment of the trial court held that the evidence was sufficient to sustain findings that the shipment was delivered to the carrier in good condition and that it arrived at its destination in decayed condition. The defendant attacks those findings in this court on the ground that they are contrary to the manifest weight of the evidence. Gailon Gentry, a buyer for the plaintiff, testified that he observed the cherries during the process of packing and loading for shipment and that "They were bright, fresh, clean cherries, with no decay." An inspection certificate issued by the United States Department of Agriculture showed that when the cherries were delivered to the consignee, however, they contained "From 1 to 9%, average decay * * * mostly in advanced, some in early stages." Although there were discrepancies in Gentry's testimony they were not, in our opinion, of sufficient significance to warrant disturbing the conclusions of the trial and appellate courts. Not all of the cherries were inspected in Cincinnati. The inspection certificate mentions only Bing cherries and there is no evidence in the record concerning the condition of the Lambert cherries upon delivery to the consignee. It is not necessary, however, that each box of cherries be examined in order to determine the overall condition of the shipment. Indeed, the defendant concedes that plaintiff has proved the bad condition of the Bing cherries notwithstanding that only a fraction of the boxes of Bings were inspected in Cincinnati. No convincing reason has been suggested why the condition of the Lamberts may not, like that

of the uninspected Bings, be inferred from the condition of those cherries that were inspected.

The defendant also contends that the deterioration of the cherries was caused by the act of the shipper. The record shows that the car was iced on July 4 and re-iced each succeeding day through July 9. It was not iced on July 10. It was re-iced at an undisclosed time on July 11 at Chicago. It was not re-iced on July 12, and it arrived in Cincinnati at 9:40 P.M. on that date. At 11:30 A.M. on July 13 the plaintiff's agent was contacted and gave instructions that the car was not to be re-iced. On this issue the appellate court said: "Assuming *arguendo* that defendant had no duty to contact plaintiff's agent 14 hours before, when the car first arrived in Cincinnati, and further assuming that defendant had no duty upon arrival of the car in Cincinnati to check the level of ice in the car's bunkers and re-ice if necessary, it still does not necessarily follow that the cause of the deterioration of the cherries was plaintiff's agent's direction not to re-ice. This is so because there is no evidence in the record indicating that defendant iced the car from Chicago to Cincinnati. Conflicting inferences from varied items of evidence are involved, and we are not able to say, on the record before us, that defendant's evidence and the inferences reasonably to be drawn therefrom so preponderate that an opposite conclusion to that drawn by the trial court is clearly apparent." 44 Ill. App. 2d at 59.

The defendant argues that this disposition can not stand because it is contrary to an admission made by the plaintiff. In its answer the defendant alleged "that, during the time the shipment was under the control of defendant, defendant performed all duties assumed by it as a connecting carrier." Because the plaintiff in his reply did not deny this allegation, the defendant contends that it stands admitted as a matter of law under section 40(2) of the Civil Practice Act. (Ill. Rev. Stat. 1963, chap. 110, par. 40(2). This contention can not prevail. Even if the quoted portion of the

answer can be regarded as anything more than a denial of the allegations of the complaint, the issue that it sought to tender was immaterial under the governing statute.

The remaining issue is whether the trial court applied a proper standard in ascertaining damages. It is settled that "the ordinary measure of damages * * * is the difference between market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive." (*Gulf, Colorado & Santa Fe Railway Co.* v. *Texas Packing Co.* 244 U.S. 31, 37, 61 L. ed. 970; *W. A. Stackpole Motor Transportation, Inc.* v. *Malden Spinning & Dyeing Co.* (1st Cir. 1958), 263 F.2d 47.) Although the record before us contains no explicit statement of the measure of damages employed by the trial judge, it appears, as the appellate court stated, that he "rejected plaintiff's market value evidence and used [instead] * * * plaintiff's cost price and sale price." By using the plaintiff's cost as a basis for determining damages the trial court placed upon the carrier the risk of a decline in market price. This was error, and the judgment entered upon that basis can not stand.

The plaintiff's cherries were sold at auction. To prove the amount of his damages, the plaintiff offered evidence of the wholesale street price of cherries in Cincinnati on July 15, 1957. The wholesale street prices were then converted to a hypothetical auction price by deducting an assumed jobber's commission. From the record, however, it is not clear that there were no relevant auction sales of cherries. There was testimony that while the trial was in progress the appropriate United States Department of Agriculture official in Cincinnati was "checking his old auction records," to determine the existence of auction sales. In this condition of the record we think that it is appropriate to remand the case for a new trial on the damage issue only.

See *Paul Harris Furniture Co.* v. *Morse,* 10 Ill.2d 28; *Olson* v. *Chicago Transit Authority,* 1 Ill.2d 83.

The judgment is reversed and the cause is remanded for a new trial as to damages.

*Reversed and remanded, with directions.*