MONTGOMERY WARD & COMPANY, INC., Plaintiff-Appellee, *v.* PETER J. McBREEN & ASSOCIATES, Defendant.—(EASTERN AIRLINES, INC., Defendant-Appellant.)

First District (4th Division)    No. 62075

Opinion filed June 23, 1976.

JOHNSON, P. J., dissenting.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Robin J. Omahana, of counsel), for appellant.

Christopher J. Michas, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Montgomery Ward & Company, Inc. (Wards), brought this action against Eastern Airlines, Inc. (Eastern), and Peter J. McBreen & Associates (McBreen) to recover the value of certain merchandise lost under a contract for transport. After all appropriate pleadings had been filed, each party filed a motion for summary judgment together with supporting memoranda. On March 17, 1975, the trial court (1) granted summary judgment to Wards against Eastern in the amount of $11,875 plus costs; (2) granted summary judgment to McBreen against Wards; (3) denied summary judgment to Wards against McBreen; and (4) denied summary judgment to Eastern against Wards. This appeal is brought by Eastern in which it seeks to set aside that part of the order denying its motion for summary judgment and entering summary judgment against it.

The record reveals the following uncontested facts. On August 16, 1969, Wards delivered several cartons of furs to Scott Air Freight, Inc. (Scott), an air freight forwarder, for transport to Wards' facilities in Washington, D.C. Scott, who is not a party in this action, issued five bills of lading. Thereafter, Scott consolidated the shipment and delivered the package in its name to Eastern. Eastern's airbill listed Scott as the shipper and Pollard Delivery Service as the consignee. Eastern lost the goods which had an admitted value of $11,875.

On September 24, 1969, Scott notified Eastern of its claim for the missing merchandise. Three weeks later, Scott filed a formal claim in which it indicated that Wards was the owner of the goods. Upon receipt of this claim, Eastern employed McBreen to adjust and settle the matter. McBreen proceeded to investigate the claim and ultimately determined

that it should be settled for the full amount of $11,875. Pursuant to this determination, McBreen sent releases to Scott on February 9, 1970, for execution by both Scott and Wards. Scott duly executed the release two days later. The release then was forwarded to Wards who executed and returned it to McBreen on April 7, 1970.

During the period prior to the return of the release by Wards, the matter was further complicated. On February 18, 1970, Mr. C. H. Robus of Eastern wrote Scott and stated that he, Robus, had been authorized to make settlement. Enclosed with the letter was a release to be executed by an officer of Scott. Scott duly executed the release and returned it to Eastern. On March 13, 1970, Eastern issued its check payable to Scott in the amount of $11,875. This was approximately one month before the first release was executed and returned by Wards. Scott promptly cashed the check, but failed to turn over the proceeds to Wards. Apparently, Scott subsequently ceased its operations and went into bankruptcy, which accounts for the fact that it was not a named defendant in this action by Wards. One year later, on March 11, 1971, Wards advised Eastern by letter that its claim for $11,875 had not been satisfied. Eastern's subsequent refusal to issue a second settlement check resulted in this action.

In this appeal Eastern contends that its motion for summary judgment against Wards should have been granted, and that conversely, Wards' motion for summary judgment against it should have been denied. Eastern argues that it was in privity of contract only with Scott, and consequently, full payment to Scott satisfied its obligation. We agree.

■■  As Eastern points out, the liability of a common carrier for the loss or damage of property received for interstate shipment is governed exclusively by Federal law. (*Mirski v. Chesapeake & Ohio Ry. Co.*, 44 Ill. App. 2d 48, 194 N.E.2d 361, *rev'd on other grounds*, 31 Ill. 2d 423, 202 N.E.2d 22.) Of particular importance to this litigation is section 1013 of the Freight Forwarders Act (49 U.S.C. 1001 *et seq.*) which subjects a freight forwarder to the provisions of sections 20(11) and 20(12) of the Interstate Commerce Act, commonly known as the Carmack Amendment. (49 U.S.C. 20(11), 20(12).) In simplest terms the Carmack Amendment can be described as a codification of the common law rule making a carrier liable, without proof of negligence, for all damage to the goods transported by it, subject to certain exceptions. (*Secretary of Agriculture v. United States*, 350 U.S. 162, 100 L. Ed. 173, 76 S. Ct. 244.) It has been said that the purpose of the Carmack Amendment is to relieve shippers of the onerous burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods. (*Reider v. Thompson*, 339 U.S. 113, 94 L. Ed. 698, 70 S. Ct. 499.) But while the amendment was enacted for the benefit of shippers, so too was it passed to accommodate the carrier. As a necessary

corollary one must note that the design of the statute is to afford protection to the common carrier against having to pay more than once for any loss or damage for which it may be responsible. *Gamble-Robinson Commission Co. v. Union Pacific R.R. Co.*, 180 Ill. App. 256, 264, *aff'd*, 262 Ill. 400, 104 N.E. 666.

■■ As stated above, section 1013 of the Freight Forwarders Act subjects freight forwarders to the provisions of the Carmack Amendment. Section 1013 further provides that " * * * the freight forwarder shall be deemed both the receiving and delivering transportation company * * *." Thus, a forwarder has characteristics of both shipper and carrier. In its relations with carriers, the status of the forwarder is that of a shipper; and in relation to its shipper, the freight forwarder assumes the posture of a carrier. (*Chicago, Milwaukee, St. Paul & Pacific R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 93 L. Ed. 817, 69 S. Ct. 692.) The effect of this principle on the case at bar is that Eastern is compelled to consider Scott, and not Wards, as its shipper; and consequently, under the provisions of the Carmack Amendment, Eastern's liability runs directly to Scott. We must note also that Wards has an action against Scott, for in its relations with Wards, Scott is a carrier.

In their briefs, both Wards and Eastern make much ado over whether Wards' complaint seeks recovery *ex contractu* or *ex delicto*. The controversy in large part stems from the carefully reasoned opinion in *Cain-Sloan Co. v. Louisville & Nashville R.R. Co*, 221 Tenn. 70, 424 S.W.2d 787 (1968). In *Cain-Sloan* the court recognized that the combined effect of the Freight Forwarders Act and the Carmack Amendment is to make the freight forwarder an independent contractor which acts for itself when arranging a contract of carriage. The court rejected any notion that the forwarder acts as agent for an undisclosed principal through whom the owner can trace liability to the common carrier. Thus, the court held that a shipper, such as Wards, cannot maintain an action *ex contractu* for loss or damage to property based upon a bill of lading issued by a carrier to the freight forwarder. Rather, the shipper's action is against its own freight forwarder with whom it solely has a contract of carriage. The court suggested, however, that the owner could maintain an action *ex delicto* against the common carrier based upon common law principles of negligence.

We are not concerned with whether Wards' complaint should be characterized as seeking recovery *ex contractu* and thereby is barred under the *Cain-Sloan* doctrine, or whether in fact the complaint seeks relief *ex delicto*. In our opinion such a determination only served to obscure the more fundamental legal principles involved.

■■ The law abounds in the proposition that as between two innocent parties, the less blameful should prevail. Initially, we must note that

Wards was the party who chose Scott as its freight forwarder. Had Wards chosen a more responsible contractor, the present action would have been unnecessary. But more importantly, it appears from the record that only after Scott was paid and subsequently went into bankruptcy did Wards assert its separate claim for loss. Shortly after Eastern lost the merchandise, Scott filed its claim for loss. Wards made no objection. Eastern in good faith immediately proceeded to negotiate and settle the claim with Scott, the party to whom it was directly liable, and the only party asserting a claim against it. Eastern paid Scott. Wards now seeks to force Eastern to pay twice for the same loss. We believe that under the circumstances, Wards was obliged to notify Eastern of its claim, if it desired to circumvent the usual course of proceedings and seek recovery directly from Eastern. Absent such notification, Wards is bound to accept the finality and validity of a settlement achieved in accordance with federally prescribed rules.

Wards justified its tardy claim in large part upon the release drafted by McBreen to which it and Scott were parties. Wards contends that since Eastern retained McBreen to settle the loss, it is bound to honor the commitment of its agent. The thrust of Wards' argument is that McBreen settled with Scott *and* Wards, and that such a joint liability could not be discharged by payment only to Scott. In other words, Wards maintains that Eastern also promised to pay it and that no payment was received. We believe this to be a strained argument.

Under the terms of the release, Wards became a joint payee or obligee. As stated by our Supreme Court in *Harding v. Parshall*, 56 Ill. 219, 226-27, "That a payer or other obligor may pay to either of several joint payees, and thereby become fully discharged, is a proposition so plain as to require the citation of no authority in its support." (See also *Lyman v. Gedney*, 114 Ill. 388; Annot., 142 A.L.R. 371 (1943).) Thus, the facts permit only one conclusion. Eastern extinguished its debt under the release by full payment to Scott.

■■ In sum Wards entrusted its merchandise to Scott and not Eastern. Thus, as between Wards and Scott the relationship of bailor/bailee existed. Eastern lost the goods and made full restitution to the sole party with whom it had dealt and with whom it had a contract. As a general common law rule, either a bailor or bailee may bring an action against a negligent third party for loss or damage to the bailed property; but a recovery by one, through either judgment or settlement, will bar an action by the other. (Annot., 118 A.L.R. 1338, 1344, (1939).) Thus, as stated in *Walsh v. United States Tent & Awning Co.*, 153 Ill. App. 229, 231:

> "A bailee, having a special property, may recover the whole value of the property, holding the value beyond his own interest in *trust* for the general owner, and the judgment recovered by the bailee

may be pleaded in bar to any action that might be afterwards brought by the general owner for the same property."

Wards took no affirmative action to advise Eastern that payment should be made to it and not Scott. In our opinion Wards now must pursue its claim against Scott. The fact that Scott is apparently insolvent indeed is unfortunate; but Wards' misfortune in hiring Scott should not be visited upon Eastern who at all times acted promptly and in good faith in attempting to resolve the matter.

For the foregoing reasons, the judgment of the circuit court is reversed and remanded with directions to enter judgment in favor of Eastern and against Wards.

Reversed and remanded with directions.

ADESKO, J., concurs.

Mr. PRESIDING JUSTICE JOHNSON, dissenting:

In this case the majority holds that Montgomery Ward became a joint payee under the terms of the release, and that full payment to Scott, the other payee, discharged Eastern from liability to both parties. I disagree with this holding because in my opinion, the release entered into by Eastern and Scott only discharged the shipper's obligation to the freight forwarder and had no affect on Montgomery Ward's negligence action. Therefore, I would affirm the decision of the trial court granting summary judgment to Montgomery Ward against Eastern.

The threshold question becomes whether or not a shipper can sue an underlying carrier when goods are lost due to the negligence of the carrier. In the instant case, the majority seems to hold that Montgomery Ward does not have a right of action against Eastern, the negligent carrier, because Eastern's liability runs directly to Scott. While Eastern's liability does run directly to Scott, it is not limited to Scott because a shipper's right to sue does not depend exclusively on the contract of carriage. In *Chicago, Milwaukee, St. Paul & Pacific R. Co. v. Acme Fast Freight* (1949), 336 U.S. 465, 93 L. Ed. 817, 69 S. Ct. 692, the Supreme Court recognized a shipper's common law right of recovery against a negligent carrier by stating in footnote 27 (336 U.S. 465, 488, 93 L. Ed. 817, 830-31, 69 S. Ct. 692):

"Of course shippers by freight forwarder have for many years been permitted to sue underlying carriers for loss or damage occasioned by the latter. *New Jersey Steam Navigation Co. v. Merchants' Bank*, 6 How. 344 (1848); *Great Northern R. Co. v. O'Connor*, 232 U.S. 508 (1914). The theory of these actions was that the shipper is the undisclosed principal of its agent, the

forwarder, in the latter's contract with the carrier. The forwarder, as agent of an undisclosed principal, could, of course, sue on the contract. *Merchant Shippers Association v. Kellogg Express & Draying Co.*, 28 Cal. 2d 594, 170 P.2d 923. See Bunge, Law of Draymen, Freight Forwarders and Warehousemen, p. 117. See also Restatement of Agency, §§322, 364."

Then, in *Delaware, L. & W. R. Co. v. United States* (S. D.N.Y. 1954), 123 F.Supp. 579, a railroad sued the United States for freight charges it allegedly owed on shipments of food. The United States counterclaimed for damages sustained to the shipments of machinery owned by the government and delivered to the Ithaca Gun Company, the consignee. The court held that the United States could sue for damage even though it was named in the bill of lading. Likewise is *Thompson v. American Abrasive Metals Co.* (Tex. Civ. App. 1952), 253 S.W.2d 83, where a Texas court held that a shipper who delivered goods to a freight forwarder could sue the underlying carrier. Thus, it becomes clear that a shipper-owner like Montgomery Ward has a direct right of action against a carrier even though it is not a party to the contract of carriage; if it is a lawful holder thereof or entitled to recover thereon, the action may be maintained. (*Valco Manufacturing Co. v. C. Rickard & Sons, Inc* (1952), 22 N.J. Super. 578, 92 A.2d 501.) However, in the instant case, it is interesting to note that Montgomery Ward does not sue on the contract of carriage but, instead, it brings a common law negligence action. The majority does not think it makes a difference whether this is a contract action or a negligence action, but I think the nature of the action is a most significant factor. In *Cain-Sloan Co. v. Louisville & Nashville R.R. Co.* (1968), 221 Tenn. 70, 424 S.W.2d 787, a case relied on by the majority which held that a party bringing an action could not proceed ex contractu because it was not a party to the bill of lading, also held that recovery could be had ex delicto since a carrier like everyone else is liable for wrongful injury. In light of *Cain-Sloan*, Montgomery Ward's cause of action for negligence would clearly lie.

Now that it has been established that Montgomery Ward had a cause of action against Eastern, it must be determined if the release signed by Eastern and Scott discharged Eastern's obligation to Montgomery Ward. Although the majority states that the law abounds in the proposition that as between two innocent parties the less blameful should prevail, they cite no authority for this legal proposition. I do not think that blame has anything to do with Eastern's liability to Montgomery Ward. The general rule is that a release is a contract and its construction is governed by the rules of law that prevail in contract cases. (*Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 150, 308 N.E.2d 118.) The question as to what persons are released depends on the intention of the

parties as gathered from a construction of the instrument. While it has been held, as the majority points out, that one of several joint obligees may execute a valid release by which the entire obligation is discharged, a release by one person will not ordinarily discharge the claim of another who is not a party to the release, and whom the releasor has no power to bind against the releasee. (*United States v. Standard Oil Co.* (1947), 332 U.S. 301, 305, 91 L. Ed. 2067, 2070, 67 S. Ct. 1604; 76 C.J.S. *Release* §46 (1952).) The release in the instant case runs specifically in favor of Scott even though Eastern knew at the time it executed and mailed the second release that Montgomery Ward had an interest as the owner of the goods. And since the parties to the release were aware of Montgomery Ward's claim, I don't think the release was intended to or can be binding on Montgomery Ward. Moreover, Scott has no power to bind Montgomery Ward since this is not a suit on the contract of carriage but a negligence action. The release in the case at bar represented a promise to pay the releasor, Scott, the amount specified as consideration for Scott's forbearance in suing. Since Montgomery Ward was not a party to the second release and received no consideration for the release that it did execute, I fail to see how Montgomery Ward's cause of action would be extinguished. Furthermore, I don't think the release in the instant case can be extended to cover parties that are neither named nor referred to therein, especially where that party has an entirely independent cause of action. To do otherwise will be to permit carriers like Eastern to escape liability for its negligent acts.