## BRUNER *v.* CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY.

[No. 13,039.   Filed April 20, 1928.]

*Sanford Trippet,* for appellant.
*T. Morton McDonald,* for appellee.

NICHOLS, J.—Action by appellant against appellee, as initial carrier, under the Carmack Amendment to the Act to Regulate Commerce, for alleged damage to livestock sustained in transit while in the possession of a connecting carrier.

There was a special finding of facts and conclusions of law stated thereon by the court. The conclusions of law stated on the issues involved on the first paragraph of complaint were against appellee, and, on the second and third paragraphs, the conclusions were against appellant.

Judgment was rendered against appellee on the first paragraph of complaint for $53.56, and, on the second and third paragraphs, against appellant that he take nothing.

Appellant relies for reversal on error of the court in its second and third conclusions of law and appellee by cross-error asks a reversal as to the first and fourth conclusions of law.

It appears by the special findings here involved that at all times appellee was a common carrier of goods and livestock for hire between Patoka, Indiana, and elsewhere in said state; that on December 27, 1924, appellant delivered to appellee at Patoka, at about 2 o'clock p. m., 165 hogs and nine calves, all alive and in good condition, at said time the property of appellant, con-

signed and to be carried to Long, West and Company, Cincinnati, Ohio, within a reasonable time and there delivered to said consignee.

That eighty-five of said hogs and nine calves were loaded in one car and the remaining eighty hogs were loaded in another car; that both said cars left Patoka in the same train and were delivered at destination at the same time; that Patoka was on appellee's road and the destination of said stock was not on the road of appellee, but was on the road of the Baltimore and Ohio Railroad, a connecting carrier, with which appellee's road connects at Vincennes, Indiana; that said two cars of livestock were safely transported by appellee from Patoka to Vincennes, and were there delivered to said connecting carrier, the Baltimore and Ohio Railroad Company, at about 8 o'clock p. m., on December 27, 1924, and, at the time so delivered to said connecting carrier, all said livestock was alive and in good condition; that said livestock was handled by appellee in a careful and prudent manner, and in a reasonable time; that there was a sudden change in the temperature on said day, the lowest temperature being eleven degrees Fahrenheit below zero and the highest temperature being twenty-five degrees Fahrenheit above zero. That the said Baltimore and Ohio Railroad Company transported said livestock from Vincennes to Cincinnati, and there delivered it to the consignee at the stock yards at about 1 o'clock p. m., December 28, 1924; that said livestock should have been delivered at said stock yards not later than 8 o'clock a. m. December 28, 1924, and it was not delivered in a reasonable time, but was delayed from 8 o'clock a. m. till 1 o'clock p. m. of said day, which is an unreasonable delay; that, when said stock was delivered, the one car contained eighty-five hogs and nine calves, all alive and in good condition, but, when the other car was delivered, it contained seventy-seven live and three dead hogs;

that there was no evidence of physical injury to the dead hogs that could have caused their death; that they weighed 480 pounds, and had the same been alive and in good condition would have been worth $51.60; that the carcasses of said three dead hogs so delivered were reasonably worth $3.85, that appellant paid appellee the freight charges for said shipment, but the appellant did not, either in person or by agent, accompany the shipment. That said livestock was shipped by appellant and accepted and transported by said carriers, under a uniform livestock contract, duly executed by appellant and appellee. That the death of said three hogs was caused by the unreasonable delay in the shipment by the Baltimore and Ohio Railroad from Vincennes, Indiana, to Cincinnati, Ohio, a distance of over 200 miles.

It is apparent that the shipments here involved were made in interstate commerce, and hence the rights and remedies of the parties are governed by the acts of Congress to regulate such commerce, and that the Indiana shippers' act, §§4699-4701 Burns 1926, is not controlling. If it were, such statute does not purport to fix any liability upon the initial carrier for the negligence of subsequent carriers, and, by the findings, there was no fault or negligence upon the part of appellee, the initial carrier.

So much of the Carmack Amendment and subsequent amendments to §20 of the Federal Act to Regulate Commerce as is applicable to this case reads as follows: "That any common carrier . . . receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it," etc. (Sup. U. S. Comp. Stats. 1923, Cumulative Supp., §8604a). It is thus apparent that, by the express terms of the contract, any

action against the initial carrier must be by the lawful holder of the receipt or bill of lading. The burden was upon appellant to establish that he was the lawful holder of the bill of lading at the time of the injury to the stock. While there is a finding that appellant was the owner of the stock at the time of its delivery to appellee, there is no finding that he was such owner or the lawful holder of the bill of lading at the time of its injury. It is well settled that regardless of the ownership of the property at the time it was delivered to the carrier, in the absence of an express contract retaining title in the shipper, the title vests in the consignee upon such delivery to the carrier and the consignee alone has the right of action for injury thereto.

It appears by the findings that appellee received the property from appellant, and that it was consigned to Long, West and Company, Cincinnati. The findings are silent as to the ownership of the property thereafter, and the presumption of law is that the title then vested in the consignee who was, therefore, the lawful holder of the bill of lading. *Butler* v. *Pittsburgh, etc., R. Co.* (1897), 18 Ind. App. 656, 46 N. E. 92; *Cleveland, etc., R. Co.* v. *Partlow* (1919), 70 Ind. App. 616, 123 N. E. 838. Without title to the property at the time of its injury, appellant had no right of action for damages resulting from such injury. Having reached this conclusion, we do not need to consider other questions.

The judgment is affirmed as to the second and third conclusions of law, and reversed as to the first and fourth conclusions, with instruction to the court to restate the same in favor of appellee.