[S. F. No. 17302. In Bank. July 16, 1946.]

MERCHANT SHIPPERS ASSOCIATION (a Corporation), Respondent, v. KELLOGG EXPRESS AND DRAYING CO. (a Corporation), Appellant.

Derby, Sharp, Quinby & Tweedt and Lloyd M. Tweedt for Appellant.

Jacobs, Blanckenburg & May and G. B. Blanckenburg for Respondent.

SPENCE, J.—This is an appeal from a judgment for damages which the court found plaintiff had sustained by reason of defendant's handling of a piece of machinery in the course of delivery to its destination. As grounds for reversal, defendant challenges: (1) The right of plaintiff to maintain this action; (2) the sufficiency of the evidence to sustain the findings upon which defendant's liability was based; and (3)

the propriety of the damage award. The record does not support defendant's position.

Both plaintiff and defendant, California corporations, were engaged in interstate commerce, plaintiff as a "freight forwarder" and defendant as a common carrier. On or about August 1, 1942, defendant, by agreement with plaintiff, took delivery of certain woodworking machinery—"a Heath 2 Drive Sander Machine"—encased in a crate and weighing 5,500 pounds, at the freight shed of the Associated Forwarders in San Francisco. Said machine had been shipped by Beach Manufacturing Co. from Montrose, Pennsylvania, as consignor, to Defense Plant Corporation, c/o Moore Drydock Company, Oakland, California, as consignee, through plaintiff as the "freight forwarder." In defendant's attempt to load the machine on a rack trailer at the freight shed in San Francisco, both the trailer and the machine were overturned, tearing off the skids on which the machine was bedded as it dropped from the freight platform to the street. Some six days later defendant caused the skids to be replaced and delivered the machine to the consignee. Immediately thereafter the consignee discovered the machine had numerous breaks and cracks, and notified plaintiff. Plaintiff authorized the consignee to have the machine repaired. After the repairs were made, the consignee still refused to accept the machine and filed a claim with plaintiff for its alleged value of $2,626.05, plus cost of repairs amounting to $325.53, or a total of $2,951.58, which sum plaintiff paid in full. Thereupon plaintiff brought the present action and recovered judgment for $2,051.58, upon the finding of the trial court that $900 was then the value of the machine in the possession of plaintiff.

The business association of the parties appears from the undisputed testimony of plaintiff's assistant vice-president. He testified that plaintiff had taken possession of the crate of machinery at Montrose, Pennsylvania, and agreed to transport it to Defense Plant Corporation, c/o Moore Dry Dock Company at Oakland, California; that at that time plaintiff had an agreement with defendant providing that the latter should pick up at a designated point in San Francisco all plaintiff's shipments destined for Oakland at a flat rate irrespective of compensation collected by plaintiff. He further testified that plaintiff was engaged in the assembling of less than carload shipments of freight into full cars in the eastern

part of the United States and forwarding them to strategic points on the Pacific Coast for distribution to the ultimate consignees, and that the damaged machinery was shipped in a Santa Fe railroad car which plaintiff supervised and consolidated, and on which it paid the freight. He also testified that plaintiff was a freight forwarding company possessing a certificate from the Interstate Commerce Commission. To supplement his testimony, a copy of the "concurrence agreement" between plaintiff and defendant as to freight tariffs was introduced in evidence.

In attacking at the outset plaintiff's right to maintain this action, defendant refers to the complaint as affirmatively showing, and to the evidence as substantiating, that "plaintiff was a mere forwarder and that other parties were the shipper, consignee and bailee in possession of the machine at the time of the alleged damage." It is defendant's theory that as a forwarder, plaintiff's interest did not extend beyond the initial shipping arrangements and that title to the machine rested with the consignee, who became the only party entitled to litigate this damage claim. As authority for its position, defendant cites such cases as *Lawrence* v. *Minturn*, 17 How. (58 U.S.) 100 [15 L.Ed. 58], and *Bruner* v. *Chicago & E. I. Ry. Co.*, 87 Ind.App. 374 [161 N.E. 680]. These cases merely stand for the well-recognized proposition that when title has passed to the buyer on delivery to the carrier, and when the lawful possession of the bill of lading is in the consignee, the consignor may not bring an action for damages to the goods occurring while in transit. They have no application here where plaintiff's interest in the shipped goods was that of a "freight forwarder" as defined by the Interstate Commerce Act, 49 U.S.C.A., 1945 Cumulative Annual Pocket Part, page 299, section 1002(a) (5), to be "any person which (otherwise than as a carrier subject to chapter 1, 8, or 12 of this title) holds itself out to the general public to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) *assumes responsibility for the transportation of such property from point of receipt to point of destination,* and

(C) *utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapter 1, 8, or 12 of this title.''* (Emphasis added.)

When a forwarder assembles various lots of goods for transportation in carload lots, and by contract assumes the responsibility for safe carriage from point of receipt to point of destination, the forwarder becomes, so to speak, a freight forwarder, or forwarder with common carrier liability, as well as a forwarder shipper. (*Heath* v. *Judson F. Forwarding Co.*, 47 Cal.App. 426, 430 [190 P. 839]; *cf. United States* v. *Chicago Heights Trucking Co.*, 310 U.S. 344, 346 [60 S.Ct. 931, 84 L.Ed. 1243].) Distinguishable on the basis of actionable interest is the forwarder who merely accumulates goods for shipment, for a fee which is paid by the shipper, and who assumes no responsibility beyond shipping the goods by a reliable common carrier. Here through the ''concurrence agreement'' between the parties, it appears that defendant, engaged by plaintiff to attend the final carriage of the machine to the designated consignee, fits into the pattern of plaintiff's full undertaking as the latter's delivery agent. When such freight forwarder entrusts to a carrier goods which are damaged in transit, and the freight forwarder pays the consignee upon a legitimate claim, the freight forwarder should be permitted to maintain an action against the negligent carrier. (Bunge, Law of Draymen, Freight Forwarders and Warehousemen, p. 117.)

There is no claim here that the consignee was not the lawful holder of the bill of lading. But, as appears from the testimony of plaintiff's assistant vice-president, the significant circumstance is that in the absence of a counterorder by the owner, plaintiff had the right to control the shipment incident to its assumption of responsibility for the ''safe through carriage'' of the machine to its point of destination. (*United States* v. *Chicago Heights Trucking Co., supra,* 310 U.S. 344, 346.) Such freight forwarder stands in the position of a bailee with the added liability of a common carrier. (*Heath* v. *Judson F. Forwarding Co., supra,* 47 Cal.App. 426, 430-431.) Thus, unlike an ordinary bailee, such freight forwarder assumes an obligation tantamount to that of an insurer of the goods entrusted to it, and its liability does not terminate upon delivery to a carrier. With responsibility so extended for the full carriage period to the point of destination, its correlative right of action against a third person

for damage to the goods in transit should not depend on the factor of actual possession. These considerations affecting plaintiff's distinct status as a freight forwarder negative any force which defendant seeks to attach to its citation of the case of *Schuette* v. *Larson,* 44 Cal.App.2d 296 [112 P.2d 275].

■ The next question to be considered is the sufficiency of the proof of defendant's liability for the alleged damage. Defendant cites the general rule that "the burden is on plaintiff to prove that the property was in good condition when delivered to the carrier." (13 C.J.S. § 254 d, p. 538; *Ohio Galvanizing & Mfg. Co.* v. *Southern Pacific Co.,* 39 F.2d 840, 841.) While this general rule may be relied upon when there is no direct proof of an accident resulting in injury, we believe that the evidence here was sufficient under the circumstances to sustain the findings imposing liability upon defendant. The happening of the accident was admitted by the pleadings and was proved by uncontradicted evidence. The admitted damage found to exist after the accident, consisting of cracks and breaks in the end frames, was obviously the type of damage which might reasonably have been expected to result from the dropping of heavy machinery. There was no proof that the machinery was not in good condition when received by defendant, but on the contrary it was shown that it was then encased in a crate and was mounted on skids. Under these circumstances the trial court was justified in drawing the reasonable inference that the cracks and breaks in the end frames occurred when the machine was dropped to the street and the skids were torn off. Furthermore, despite certain denials in defendant's answer, the case was apparently tried upon the theory that the above-mentioned damage to the machine occurred when it dropped to the street.

■ Thus, plaintiff's assistant vice-president was permitted to testify, without objection, that his company had been notified by the consignee "that that machine had been injured by the Kellogg Express and Draying Company." This was hearsay testimony, but it is well settled that where hearsay testimony is admitted without objection, such evidence may be considered on appeal in support of the trial court's findings. (*Weiss* v. *Bank of America,* 57 Cal.App.2d 892, 895-896 [135 P.2d 584], and cases there cited; *West Coast L. Ins. Co.* v. *Crawford,* 58 Cal.App.2d 771, 784 [138 P.2d 384].)

Defendant's final objection concerns the amount of the damage award. The trial court found that plaintiff had

"been damaged in the sum of $2,626.05, the value of the machine before the injury, plus the sum of $325.53, the cost of repairs, or a total of $2,951.58, less the sum of $900, the present value of the machine after the injury, or a net of $2,051.58." Thus it appears that the damage award included both the cost of repairs and the purported difference between the value of the machine immediately before the injury and its value after the repairs had been made. Defendant contends first that the trial court applied the wrong measure of damages; and second, that in any event there was no evidence to sustain the findings upon which the award of $2,051.58 was based. We are of the opinion that neither of these contentions may be sustained.

Under the evidence hereinafter discussed and the facts found by the trial court, the measure of damages applied was in accord with the rules set forth in *Byrne* v. *Western Pipe & Steel Co.*, 81 Cal.App. 270, 272-274 [253 P. 776]. (See, also, 25 C.J.S. § 83, pp. 597-599.) It is undisputed that the machine was a new one at the time of injury, and there was ample evidence to justify the conclusion of the trial court that the machine could not be completely repaired and restored to its previous condition with the value which it had prior to the injury. In the Byrne case, *supra,* it is said at page 274 that "if the damaged property cannot be completely repaired, the measure of damages is the difference between the value before the injury and its value after the repairs have been made, plus the reasonable cost of making the repairs. [Citing cases.] The foregoing rule gives the plaintiff the difference between the value of the machine before the injury and its value after such injury, the amount thereof being made up of the cost of repairs and the depreciation notwithstanding such repairs." The rule urged by defendant, which limits the recovery to the cost of repairs, is applicable only in those cases in which the injured property "can be *entirely* repaired." (Emphasis added.) (*Rhodes* v. *Firestone Tire & R. Co.*, 51 Cal.App. 569, 573 [197 P. 392].) This latter rule presupposes that the damaged property can be restored to its former state with no depreciation in its former value. (25 C.J.S. § 83, pp. 597-599.)

Turning to the evidence, we believe it sufficient to sustain the findings and award. It appears that the machine was a precision machine and that the repairs which were made did not restore it to its former state with no depreciation

in its former value. There was evidence showing that the value of the machine after it was repaired was much less than before the injury; that the repairs did not put it in such condition of working efficiency as would sustain a guarantee by the manufacturer; that the machine would still have to be completely overhauled and tested, preferably at the factory, before it would give satisfactory precision service in accordance with its design; that even when so overhauled and adjusted, it would nevertheless remain a secondhand machine on the market; and that this type of machine was "slow moving" on the market because of the limited demand.

While the repairs were made in the latter part of 1942 and the trial was held in June, 1944, the machine had remained in plaintiff's warehouse in the meantime and had not been used. The parties apparently tried the case upon the theory that the value of the machine immediately after the completion of the repairs was the same as the value at the time of the trial. Plaintiff's expert witness, testifying on direct examination and without objection, fixed the value of the machine "today" as "$750." On cross-examination by counsel for defendant, he was asked: "What, in your opinion, is the value of the machine?" He replied: "$750 right where it is, as is." He indicated that additional work to the amount of about $500 was required in order to sell it on the market for $1,500, in which event he would expect to make about $250 as profit in the transaction. Defendant introduced in evidence a written offer in the sum of $750 made by this witness on January 19, 1943. Defendant also introduced in evidence a written offer in the sum of $1,100 made on January 25, 1943, by a person who was not called as a witness. This purported offer was introduced on stipulation as follows: "MR. TWEEDT: With Mr. Blanckenburg's consent, I will offer in evidence a bid made on this machine, as is, where it is. MR. BLANCKENBURG: We stipulate that you received that. MR. TWEEDT: We will offer that as Defendant's next exhibit." No further reference to this offer is found in the record; and it does not appear that said offer was ever received by plaintiff or that it was made known to plaintiff at any time prior to the trial. As the parties tried the case upon the theory that there had been no change in the value of the machine from the time the repairs had been completed until the time of trial, defendant may not now complain that the

expert evidence and the findings relating to value were directed to the time of the trial rather than to an earlier time.

From what has been said it is apparent that there was sufficient evidence to sustain a finding that the value of the machine following the repairs was but $750. While it is difficult to ascertain the exact means by which the trial court arrived at the figure of $900, the error, if any, in fixing the value at $900, rather than at $750, was in defendant's favor, as the increased amount was deducted in computing the actual award. There was also sufficient evidence to sustain the finding that the value prior to the injury was $2,626.05, as there was evidence showing that that figure represented the cost of the new machine to the consignee. (10 Cal.Jur. § 127, p. 846.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied Aug. 12, 1946.