[Crim. No. 7323.   Second Dist., Div. Three.   Nov. 16, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. THEODORE KOVACH, Defendant and Appellant.

Theodore Bajkor Kovach, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Carlos F. Borja, Jr., Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—In a nonjury trial in which he was represented by the public defender, defendant was charged with three offenses of issuing checks without sufficient funds. Upon stipulation the cause was submitted upon the evidence at the preliminary hearing with the reservation of the right to produce further evidence at the trial. None was produced. Defendant did not testify either at the preliminary or at the trial.

Defendant was convicted under Counts I and III and acquitted under Count II. Probation was denied. He was sentenced to state prison and he gave notice of appeal in propria persona and has filed an opening and a closing brief.

The points on appeal are that the evidence was not sufficient to establish guilt beyond a reasonable doubt; there was a material variance between the information and the proof; impeachment of an accused by proof of a prior conviction of a felony is violative of his constitutional rights.

There was evidence of the following facts. Defendant made and issued a check for $60, drawn on the Bank of America, Hollywood-Highland Branch, dated June 6, 1959, payable to Eisenberg and Eisenberg, as the purchase price of a suit of clothing sold and delivered to him in return for the check. Defendant made and issued a check for $100, drawn on the California Bank, Van Nuys Branch, dated June 14, 1959, payable to Winifred Lelgang in repayment of a loan. Defendant made and issued a check for $15, drawn on the

California Bank, Van Nuys Branch, dated June 27, 1959, payable to Valley Photo Service as the purchase price of film and photo finishing and cash given him in return for the check. All three checks were presented to the banks upon which they were drawn and were dishonored.

With respect to the check payable to Eisenberg and Eisenberg, the People introduced the testimony of George Berg, a guard at Bank of America, Hollywood-Highland Branch. Mr. Berg testified he had access to the books and records of the bank; he had searched the books and records to determine whether there was an account or arrangement for credit whereby checks drawn by defendant in June of 1959 would be paid; there was no arrangement for credit; there had been an account but it was closed June 3, 1959. On January 1, 1959, there was a debit balance of $7.60. On the following day the debit balance was $13.60.

With respect to the checks given to Winifred Lelgang and Valley Photo Service, the People introduced evidence of Vince Lupo who testified that he was employed by the California Bank, Van Nuys Branch, upon which the checks were drawn as a member of the service staff; in that capacity he had access to the books and records of the bank; he searched the books and records to determine whether there was an account or arrangement for credit of defendant in June 1959; there was no arrangement for credit; on February 11, 1959, the account was closed by the withdrawal of a balance of $137.47; it was shown by the records that many checks had been returned to defendant and that the account was closed as unsatisfactory.

The check in favor of the Valley Photo Service for $15 was issued on the California Bank, Van Nuys Branch. It was stipulated that if a Mr. Scheck was called as a witness he would testify that he was a representative of the California Bank, Van Nuys Branch, and that he also checked the records of the bank and that as shown by the records the account of defendant was closed February 11, 1959, due to the fact that it was constantly being overdrawn. At that time defendant was sent a cashier's check for the balance of his account of $137.47 which he cashed.

First, defendant argues that there was no competent evidence that he did not have an account or credit with Bank of America, Hollywood-Highland Branch; George Berg was merely a guard at the bank, and no officer of the bank testified to the state of his account.

Mr. Berg had access to the books, examined them and testified to what he found with respect to the existence of an open account in June 1959 and as to any arrangement for credit; it was shown by the books that the account was closed June 3, 1959.

No objection was made to the testimony. It cannot be urged now that Mr. Berg was not qualified to examine the books or that he did not examine those which would show the state of defendant's account or any arrangement that may have existed extending credit. The facts stated by Mr. Berg were sufficient to prove that defendant had no account at the time he wrote the checks in June of 1959, and even though his testimony was hearsay and not the best evidence as to what the books showed or failed to show, it was not for that reason incompetent to prove the facts stated. (18 Cal.Jur.2d, Evidence, p. 123, p. 671; *Merchants etc. Assn.* v. *Kellogg Express Draying Co.,* 28 Cal.2d 594 [170 P.2d 923].)

Defendant has filed a closing brief contending that there is no case to be found in which the testimony of a bank guard or service staff employe has been received as evidence of the contents of the bank's records. In support of this contention, defendant has shown the results of his search for authority on that point. For diligence in the search for authority and in references made to law books in support of an argument, defendant has gone to great lengths in search of precedent. The brief lists 485 separately numbered volumes of the reports of the Supreme Court and the District Courts of Appeal of California and in addition thereto, 216 volumes of New York reports and New York Appellate Division reports which defendant has examined. He says that in none of these volumes was he able to find a case in which the court approved or disapproved of testimony of a bank guard or service employe respecting the contents of the records of a bank. Therefore he argues, the evidence must have been inadmissible.

Defendant's line of argument may not be as illogical as it seems at first glance. He has read the opinions of many courts. It would not be unreasonable for him to reach the conclusion that the authenticity of a statement of a legal proposition depends upon the number of times it can be shown to have been asserted in previous opinions. And we do not doubt that defendant believes he is on safe ground in arguing that no statement of a rule of law can be sound if it can be shown to be without precedent.

A further contention of defendant is that there was no proof he had a fraudulent intent in writing the checks. This was a question for the trier of fact. Not only was it shown by the testimony of Mr. Lupo that defendant's account in the California Bank had been closed in February 1959, but, as previously mentioned, it was stipulated that Mr. Scheck, a representative of the bank, if called, would testify that the account was closed February 11, 1959, because of overdrafts, and that defendant was given and cashed a cashier's check for the balance of the account. After his arrest defendant, when questioned by Officer Mott, stated that at the times the checks were written his accounts were in confusion and he was not sure of their status.

Defendant argues that the fact his account was overdrawn $13.60 on January 3 proves that he had credit with the bank the following June. It is a naive suggestion, but scarcely consistent with the fact that after the elapse of five months the overdraft was not made good.

In the absence of any testimony by defendant in explanation of his actions there was no evidence and no reasonable inference from the evidence to justify a finding by the trier of fact that defendant acted with honest motives or in the belief that the checks he issued would be honored.

A further contention is that there was a material variance between the pleading and the proof. The information charged that the check for $60, the subject of Count I, was drawn on or about the 6th day of July, 1959, whereas the proof showed that it was drawn June 6th. The check was introduced in evidence at the preliminary hearing in connection with the testimony relating to its issuance. Defendant was not misled as to the evidence. The variance was not material and defendant suffered no prejudice. In addition to that, no objection was made to the receipt of the check in evidence.

Defendant contends that impeachment of an accused by proof of a prior conviction of a felony is violative of his constitutional rights. On this point defendant's argument is that if he had testified it could have been developed on cross-examination that he had previously been convicted of a felony. The record does not show that he had been convicted of a felony.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.