446 P.2d 868

**Mary W. FREDENBURGH, Plaintiff-Appellee,**

v.

**ALLIED VAN LINES, INC., a corporation, Defendant-Appellant.**

No. 8490.

Supreme Court of New Mexico.

Nov. 8, 1968.

Modrall, Seymour, Sperling, Roehl & Harris, Peter J. Adang, Albuquerque, for defendant-appellant.

Rodey, Dickason, Sloan, Akin & Robb, Joseph J. Mullins, Mark K. Adams, Albuquerque, for plaintiff-appellee.

## OPINION

CHAVEZ, Chief Justice.

Plaintiff-appellee Mary W. Fredenburgh brought suit against defendant-appellant Allied Van Lines, Inc., alleging breach of a contract to carry her household goods and other personal effects from Summit, New Jersey, to Albuquerque, New Mexico. The trial court gave judgment for appellee, awarding her $4,695.24 as compensatory damages to her property, $1,000 for the inconvenience flowing from the damage to her property, and $2,000 as punitive damages, plus interest and costs.

On September 14, 1965, appellant loaded appellee's goods onto a truck at her house in New Jersey, at which time appellant also executed a bill of lading acknowledging receipt of appellee's goods and agreeing to deliver them to appellee in Albuquerque. At the same time, appellee signed a document entitled "Household Goods Descriptive Inventory." On this document were listed appellee's goods and, by means of a letter-code, the condition of the goods was, supposedly, noted. Appellee's belongings then began their ill-fated trip toward New Mexico. In New York City, the truck carrying the goods broke down and was delayed two days for repairs. The truck then proceeded to Harrisburg, Pennsylvania, where it broke down again and a new engine was installed. On September 26, 1965, the truck arrived in Chicago and was parked in a parking lot. While so parked, an oil stove in the parking lot attendant's hut exploded, causing a fire which spread to the truck, resulting in fire and smoke damage to appellee's be-

longings and damage by water used to extinguish the fire. The goods may have been further damaged by their transfer to another truck because of the fire. Appellee's goods were delivered to her at her new home in Albuquerque on October 11, 1965. Appellee expended approximately $3,000 for the repair, cleaning and replacement of her property. Further facts appear below.

██ Appellant's first point on this appeal is:

"WHERE THERE IS AN AGREEMENT FOR THE SHIPMENT OF GOODS BETWEEN A CARRIER AND A SHIPPER, THE BILL OF LADING CONSTITUTES THE ENTIRE CONTRACT BETWEEN THE PARTIES."

Appellant argues that the bill of lading was the written contract of carriage between the parties and that this court must look only to the written terms of the contract to determine the rights of the parties on this appeal. However, if this were true, then we would have to consider the applicability of certain provisions for limitations of liability which are in the bill of lading. As appellee points out, this would necessitate our considering matters of affirmative defense which were neither pleaded nor otherwise properly raised in the trial court. Under Rule of Civil Procedure 8(c) (§ 21–1–1(8) (c), N.M.S.A., 1953 Comp.), matters constituting an affirmative defense must be pleaded. If an affirmative defense is not pleaded or otherwise properly raised, it is waived. See 2A Moore's Federal Practice, Para. 8.27[3] at 1853 (2d Ed.1967). A provision in a contract for the carriage of goods which limits the carrier's liability is a matter of affirmative defense. See St. Louis, I. M. & S. R. Co. v. Cumbie, 101 Ark. 172, 141 S.W. 939 (1911); Clark v. Nipper, 315 S. W.2d 439, (Tex.Civ.App.1958); American Ry. Express Co. v. Thompson, 2 S.W.2d 493, (Tex.Civ.App.1927), as it "raises matter outside the scope of plaintiff's prima facie case." 2A Moore's Federal Practice, Para. 8.27[3] at 1851 (2d Ed.1967). There is no question that the matter of limitation of liability was not pleaded; thus, the question here is that of whether or not the matter was otherwise properly raised in the trial court.

██ Appellant asserts, citing 2A Moore's Federal Practice, Para. 8.27[3] at 1853 (2d Ed.1967), that failure to plead matter which constitutes an affirmative defense does not preclude a party from taking advantage of the opposing party's proof, if the proof establishes the defense. Although this proposition may be correct, Illinois Cent. R. Co. v. J. R. Kilgore & Son, 12 Ala.App. 358, 67 So. 707 (1914); cert. denied, J. R. Kilgore & Son, Ex Parte, 191 Ala. 671, 67 So. 1002 (1915); Hudson v. Wabash W. Ry. Co., 101 Mo. 13, 14 S.W. 15 (1890); see Davis v. Zimmern, 211 Ala. 63, 99 So. 307 (1924); Ward v. Curry, 341 S.W.2d 830 (Mo.1960), we do not believe that appellant should be allowed to take advantage of appellee's proof for the first time on appeal. See Supreme Court Rule 20(1) and (2) (§ 21–2–1(20) (1) and (2), N.M.S.A., 1953 Comp.); Soens v. Riggle, 64 N.M. 121, 325 P.2d 709 (1958); Mutz v. Le Sage, 61 N. M. 219, 297 P.2d 876 (1956); compare Consoer, Townsend & Associates v. Addis, 37 Ill.App.2d 105, 185 N.E.2d 97 (1962). Appellant did not point out to the trial court that he wished to take advantage of the provisions in the bill of lading limiting liability. We do not believe the trial court had the duty of perusing the contract in order to find matters of affirmative defense which were not pleaded and thereby frame the issues in the case for counsel. The reasoning stated in an analogous case, Maloney v. Brandt, 123 F.2d 779 (7th Cir. 1941), is equally applicable here:

"* * * It would manifestly be unfair to hold that the trial court had erred in a matter it had not considered. Litigants are not entitled to hide a point in an obscure pleading and present it for the first time on review, but should fully

and fairly acquaint the trial court with all matters relied upon. * * *"

Appellant did request a finding of fact which set out a part of the bill of lading as follows:

" 'SECTION 1. The carrier shall be liable for *physical loss of or damage to* any articles from external cause while being carried. * * *' [Emphasis added.]"

We do not decide whether this provision would, by itself, limit appellant's liability. Even if it would, the requested finding was, so far as the record discloses, the first intimation regarding this defense. This was too late to raise the issue. See Denver Union Stock Yard Co. v. United States, 304 U.S. 470, 58 S.Ct. 990, 82 L.Ed. 1469 (1938); Dodd v. Mills, 219 Ark. 91, 240 S.W.2d 25 (1951); compare Consoer, Townsend and Associates v. Addis, supra. To allow the issue to be thus raised would defeat the purpose of Rule 8(c), supra, which is:

" * * * [T]o require the defendant to announce in his pleadings what his defense will be, if it includes any of the matters referred to in the Rule, and to give plaintiff the opportunity of knowing what character of proof he may need to meet the defenses pleaded. * * *"

Reid v. Associated Employers Lloyds, 164 S.W.2d 584 (Tex.Civ.App.1942).

Appellant's second point reads:

"THE DISTRICT COURT ERRED IN AWARDING THE PLAINTIFF ANY DAMAGES IN EXCESS OF THE LIMITATIONS OF LIABILITY CONTAINED IN THE CONTRACT OF CARRIAGE BETWEEN THE PLAINTIFF AND THE DEFENDANT."

In view of our disposition of appellant's first point, it is not necessary for us to consider the application of the limitations of liability in the bill of lading.

Appellant's third point is that:

"THE DISTRICT COURT ERRED IN BASING THE PLAINTIFF'S COMPENSATORY DAMAGES ON THE DIFFERENCE IN VALUE OF THE PLAINTIFF'S GOODS BEFORE DAMAGE AND AFTER DAMAGE, BUT BEFORE REPAIR."

Appellant's contention is that the measure of damages which should have been applied, with the exception of damages regarding two pianos, is simply that of the cost of repairing the items damaged. With regard to the pianos, appellant contends that the cost of repairs plus the amount of depreciation in value after repairs is the proper measure of damages. Appellant asserts that the two pianos are the only items which were not entirely restored by the repair work done.

The measure of damages should be that which fully and fairly compensates for the injuries received. See Illinois Cent. R. Co. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699, 67 A.L.R. 1423 (1930); Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., 333 F.2d 705 (7th Cir. 1964), cert. denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); United States v. Northern Pac. Ry. Co., 116 F. Supp. 277 (D.Minn.1953); Rutherford v. James, 33 N.M. 440, 270 P. 794, 63 A.L.R. 237 (1928), overruled on another point in Reed v. Styron, 69 N.M. 262, 365 P.2d 912. See Trujillo v. Clark, 71 N.M. 288, 377 P. 2d 958. Generally, where property has been damaged in shipment, the rule for determining the amount of the damages is either the difference between the market value it would have had if it had been transported without damage and its market value in its damaged condition, or the cost of repairs plus any loss in value shown by the difference between the value of the goods after repair and before being damaged. Kirkhof Electric Company v. Wolverine Express, Inc., 175 F.Supp. 43 (W. D.Mich.1958), aff'd 269 F.2d 147 (6th Cir. 1959); Conditioned Air Corp. v. Rock Island Motor Transit Co., 253 Iowa 961, 114 N.W.2d 304, 3 A.L.R.3d 679 (1962), cert. denied, 371 U.S. 825, 83 S.Ct. 46, 9 L.Ed.2d 64 (1962). If the amount of damages ar-

rived at by using the former measure exceeds the amount of damages arrived at by using the latter measure, then the former measure should not be used because it reflects more than the actual loss. On the other hand, where the former measure yields an amount less than the latter measure, the former measure will more accurately reflect the actual loss and should, therefore, be used. See United States v. Northern Pac. Ry. Co., supra. A measure of damages based upon the cost of repairs alone may be used in cases where the damaged goods can be entirely repaired, bringing the value up to its pre-damage level, Kirkhof Electric Company v. Wolverine Express, Inc., supra; Merchant Shippers Ass'n v. Kellogg Express & Dray. Co., 28 Cal.2d 594, 170 P.2d 923 (1946); Spainhour v. Nolind, 97 Ga.App. 362, 103 S.E.2d 154 (1958); however, we believe that this measure should also be subject to the rule that it is to be used where it results in a lower amount which fully compensates.

▮ Considering the fact that, in the instant case, the cost of repairs amounted to less than the difference between the value of the goods before and after injury but before repair, the question presented to us is that of whether or not there is substantial evidence to support the view that appellee's belongings, besides the two pianos, had less value after being repaired than they had before being damaged. Appellant argues that the damaged items did not have this reduced value in view of the inventory of household goods which appellee signed in New Jersey when her goods were loaded onto the van. The inventory showed by a letter-code that many of the items were scratched, chipped, dented and soiled. However, under the circumstances shown by the evidence, we do not regard the inventory as conclusive of the condition of appellee's goods upon shipment. There was testimony that, after the inventory was filled out by one of Allied's men, Allied's driver handed the inventory to appellee and said, "Sign here:" that appellee did not notice the column marked "CON-

DITION AT ORIGIN" and the driver did not point this out to her; that appellee did not notice the exception symbols on the document; that there were discrepancies between the items of furniture, etc., as numbered on the inventory and the items themselves as numbered; that many of the items were not accurately described in the inventory as to their true condition upon being loaded but were described as being in worse condition than they in fact were in; that at least one item was listed which may not even have existed among appellee's possessions; that not all of appellee's belongings which were loaded on the van were marked with identification numbers; and, despite the fact that numerous items were listed on the inventory as being scratched, chipped, dented, soiled, etc., that Allied's agent recommended that appellee increase her insurance coverage of the items from $20,000 to $25,000 because appellee had "such nice things and they're in good condition." Under these circumstances, the condition of appellee's belongings at the time of shipment was a question of fact to be determined by the trial court as the trier of the facts. The trial court's determination of this question is reflected by finding of fact No. 9 which is as follows:

"9. Very few, if any, of plaintiff's belongings had any wear and tear other than what would commonly and properly be described as 'normal wear' at the time they were delivered to defendant."

Also, there is substantial evidence that numerous items, in addition to the pianos, which appellee shipped with appellant were not, even after repair, as good as they were before being shipped. The scars of charring and smoke remained on rugs, the finish on old furniture could not be fully restored, and the smell of smoke even remained with some of the items for several months after appellee's belongings were delivered to her. Under these circumstances, we believe that appellant's argument that the wrong measure of damages was imposed must be rejected. And, although

some of appellee's goods may have been fully restored by repair, when we consider the fact that household goods are often more valuable as a matter of fact to the owner of them than their market value as secondhand goods would show, Rutherford v. James, supra, it is clear that the measure of damages used by the trial court was proper.

Appellant's fourth point on this appeal states:

"EVEN IN THE ABSENCE OF CONSIDERATION OF THE LIMITATIONS OF LIABILITY CONTAINED IN THE DEFENDANT'S BILL OF LADING, THE DISTRICT COURT ERRED IN AWARDING THE PLAINTIFF PUNITIVE DAMAGES."

Punitive damages are awarded as punishment of the offender. Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967), and a warning to others. Sanchez v. Securities Acceptance Corp., 57 N.M. 512, 260 P.2d 703 (1953); Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940). Although punitive damages are not ordinarily awarded in breach of contract actions, they may be awarded against the wrongdoer in such actions:

"'* * * when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the * * * [wronged party's] rights.'"

Bank of New Mexico v. Rice, supra; Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191; Stewart v. Potter, supra. Where the party against whom punitive damages are sought to be imposed is the principal of the primary actor in the wrong done, the principal must be shown to have been connected with the requisite wrong by participation, authorization or ratification, in order for punitive damages to be properly imposed. Stewart v. Potter, supra; see Sanchez v. Securities Acceptance Corp., supra.

In the instant case even if we assume, as we may for the purpose of argument, that the conduct of the agents of appellant was maliciously intentional, oppressive, or carried out recklessly, or with a wanton disregard of appellee's rights, we do not believe that there was substantial evidence for an award of punitive damages against appellant, the principal of the primary actors. Neither the use of letters to describe the condition of appellee's belongings on the inventory, nor delay in the transporting of appellee's goods, though knowledge of these matters could be imputed to appellant, imports malice, recklessness, etc. With regard to the inventory, only the gross misdescription would import malice, etc.; however, no evidence has been pointed out to us showing that appellant had knowledge of misdescription. There is no evidence that appellant participated in, authorized or ratified the agents' conduct either with regard to the misdescription, the fire in which appellee's goods were damaged, or the transfer of the goods from one truck to another. It was not shown that the agents, who perhaps acted maliciously or 'recklessly, were themselves to be fairly considered executive in character, see Winkler v. Hartford Acc. & Indem. Co., 66 N.J.Super. 22, 168 A.2d 418 (1961); nor was it shown that they were acting with delegated authority, through regular corporate channels, so that it could be fairly said that their conduct was truly that of the principal, see General Motors Acceptance Corporation v. Froelich, 106 U.S.App.D.C. 357, 273 F.2d 92 (1959); Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal.1961). In the absence of such proof, as in Sanchez v. Securities Acceptance Corp., supra, the trier of facts could only speculate as to the authority of the agents to act for appellant. The absence of proof to support authorization, participation or ratification makes the award of punitive damages against appellant error and, therefore, to the extent of the punitive damages awarded to appellee

against appellant, the judgment of the trial court must be reversed.

Appellant's final point is that:

"EVEN IN THE ABSENCE OF CONSIDERATION OF THE LIMITATION OF LIABILITY CONTAINED IN THE DEFENDANT'S BILL OF LADING, THE DISTRICT COURT ERRED IN AWARDING THE PLAINTIFF DAMAGES FOR INCONVENIENCE."

The trial court's finding of fact No. 33 is as follows:

"33. As a result of the damages to her goods, the plaintiff was greatly worried and inconvenienced, not receiving the last of her furniture requiring repairs until several months after the fire."

Finding of fact No. 34 indicates to us that although the trial court had found that appellee had been "worried and inconvenienced" as a result of the damages to her goods, the basis of the $1,000 award of damages in the case was inconvenience, not worry. Finding No. 34 states:

"34. In addition to the physical damage to plaintiff's property, plaintiff is entitled to $1,000 compensation for her inconvenience which was the natural, direct and foreseeable result of defendant's conduct herein."

■ Two questions are presented under this point. The first is whether or not there is substantial evidence to support an award of damages for inconvenience. The second is whether or not the amount awarded was sufficiently capable of ascertainment on the evidence presented. Our answer to the first question is that an award is supportable. The evidence which supports the award of damages for inconvenience is appellee's testimony that she had to live with her house in turmoil for months; that she had to live out of a suitcase without even a dresser drawer to put things in; and that she had to wait five months until the last of her repaired furniture was brought back into her home. This is, simply, evidence of the loss of the

use of appellee's property as a result of the injuries to her property.

■ Restatement of the Law, Contracts, § 330 (1932), states:

"Foreseeability of Harm as a Requisite for Recovery.

"In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

See Mitchell v. Intermountain Casualty Company, 69 N.M. 150, 364 P.2d 856 (1961); 5 Williston on Contracts, §§ 1344, 1356, 1357 (Rev.Ed.1937). We believe it may reasonably and fairly be said that, at the time of the contract of carriage between appellant and appellee, it was foreseeable that appellant would suffer inconvenience from loss of use of her belongings, if the goods were damaged or destroyed in transit from New Jersey to New Mexico. Under the circumstances of carrying appellee's household goods across the country, such damages would follow the breach in the usual course of events. It is obvious that household goods and personal belongings are customarily used by the owner in his house. There is nothing extraordinary about inconvenience through the loss of use, when one's household goods and personal belongings are destroyed or damaged in the course of shipment to him from one place to another, and damages for this are recoverable. See Restatement of the Law, Contracts § 330, comment (d) at § 511 (1932); compare Weston v. Boston & M. R. R., 190 Mass. 298, 76 N.E. 1050, 4 L.R.A.,N.S., 569 (1906); Scott v. Byers, 275 S.W. 1088 (Tex.Civ.App.1925); Pecos & N. T. Ry. Co. v. Grundy, 171 S.W. 318 (Tex.Civ. App.1914); Missouri, K. & T. Ry. Co. v. Clifton, 80 S.W. 386 (Tex.Civ.App.1904);

Texas & P. Ry. Co. v. Douglas, 30 S.W. 487 (Tex.Civ.App.1895); Gulf, C. & S. F. Ry. Co. v. Vancil, 2 Tex.Civ.App. 427, 21 S.W. 303 (1893).

Our answer to the second question, as to whether or not the amount of the award was sufficiently capable of ascertainment on the evidence presented, is that the amount of the award is not supportable. Appellee cites Ulibarri v. Maestas, 74 N.M. 516, 395 P.2d 238 (1964); Frank Bond & Son, Inc. v. Reserve Minerals Corp., 65 N.M. 257, 335 P.2d 858 (1959); Davis v. Campbell, 52 N.M. 272, 197 P.2d 430 (1948), and argues that where, as here, the right to damages is established, difficulty in establishing the amount does not preclude recovery. These cases support the rule that, where a plaintiff shows with reasonable certainty that he has suffered damages as a result of the defendant's wrongful conduct, recovery will not be denied merely because the amount of the damages sustained is difficult of ascertainment. However, these cases do not go so far as to allow a party to recover an amount of damages where it is possible to present accurate evidence as to the amount of damages, but where the party upon whom the burden rests fails to present such evidence. See Bank of New Mexico v. Rice, supra; Louis Lyster, Gen. Con., Inc. v. Town of Las Vegas, 75 N.M. 427, 405 P.2d 665 (1965); Industrial Supply Company v. Goen, 58 N.M. 738, 276 P. 2d 509 (1954). The measure of damages for the loss of use sustained is the rental value of property similar to that damaged for the time reasonably necessary to make repairs, Brooks Transp. Co. v. McCutcheon, 80 U.S.App.D.C. 406, 154 F.2d 841 (1946); Valencia v. Shell Oil Co., 23 Cal.2d 840, 147 P.2d 558 (1944); O'Donnell v. Preston, 301 S.W.2d 288 (Tex.Civ.App.1957); or, if the property has no rental value, the value of its use to the deprived party for the time reasonably necessary to make repairs. Weddle v. I. R. C. & D. Warehouse Corporation, 119 Ind.App. 354, 85 N.E.2d 501 (1949); Weston v. Boston & M. R. R., supra. Evidence as to these measures would have given en the trial court a reasonable basis for approximating damages in this regard, but no such evidence having been presented, the $1,000 award is without substantial basis and the judgment, to the extent of this award, must be reversed.

Accordingly, the judgment of the trial court is affirmed, except that with regard to those parts of the judgment attributable to the award of punitive damages and the award of damages for inconvenience, the judgment is reversed. The cause is remanded to the trial court with instructions to vacate the judgment and enter a new judgment not inconsistent herewith. Each party will bear their own costs.

It is so ordered.

MOISE, J., and WOOD, J. Ct. App., concur.