(144 P.3d 73)
No. 95,577

SHAWN WARREN and JENNIFER WARREN, *Appellees,* v. HEARTLAND AUTOMOTIVE SERVICES, INC., d/b/a/ JIFFY LUBE, *Appellant.*

Opinion filed October 20, 2006.

*Mark M. Iba* and *David E. Sampson*, of Kansas City, Missouri, for appellant.

*Philip C. Lorton*, of Kansas City, Kansas, for appellees.

Before MCANANY, P.J., PIERRON, J., and BRAZIL, S.J.

MCANANY, J.: Heartland Automotive Services, Inc., operates the Jiffy Lube facility in western Wyandotte County where Shawn and Jennifer Warren had their automobile serviced before a vacation trip to Minnesota. In the course of the trip, the automobile lost its oil, causing the engine to throw a rod. The Warrens' damage suit against Heartland resulted in a jury verdict in favor of the Warrens. Heartland now appeals the judgment against them.

The automobile in question was a 2002 Isuzu Rodeo which the Warrens purchased for $27,000 in July 2002 as a demonstrator with 8,495 miles on it. Their trip to Minnesota was planned for April 6, 2003. The day before, Shawn Warren took the Isuzu to Heartland for an oil change and other service. The car had approximately 20,400 miles on it at the time.

The next day, while driving through Iowa, the engine breakdown occurred. The car was towed to an automobile dealership in Mason City, Iowa. Since it was Sunday, the Warrens stayed in a motel overnight and met with the service personnel the next day. That Monday they also contacted a representative of Heartland, who told them to rent a car and to continue with their vacation. When the Warrens returned to Kansas City, Heartland told them that the engine failure was not its fault and refused to pay for the rental car or any repairs. The Warrens sued.

In the course of discovery a dispute arose concerning the Warrens' identification of their expert witnesses. The district court overruled Heartland's motion to strike the Warrens' expert witnesses, and the case was tried to a jury. The jury found Heartland was 100% at fault and awarded $17,500.34 in damages to the Warrens delineated as follows:

| | |
|---|---|
| Cost of vehicle repairs | $8,061.67 |
| Loss of use of vehicle | $9,281.00 |

| | |
|---|---|
| Towing expense | $97.30 |
| Lodging | $60.37 |

*Expert Testimony*

Heartland challenges the district court permitting the trial testimony of witnesses Steven Schukei, Arthur Basinger, and Alex Herve. All were presented as expert witnesses on behalf of the Warrens. The qualification of experts and the admissibility of their testimony are discretionary matters for the trial court. We will overturn the trial court's decision on these matters only if the court abused its discretion. See *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 762, 915 P.2d 86 (1996).

### 1. Opinion Testimony of Steven Schukei

Heartland argues that Schukei was not disclosed as an expert as required by K.S.A. 60-226(b) before his deposition was taken to perpetuate his testimony for trial. The Warrens do not dispute that they failed to comply with the statutory requirements, but argue that Heartland suffered no prejudice from the nondisclosure.

The discovery provisions of our Rules of Civil Procedure were designed from the outset to do away with trial by ambush, a popular sport before adoption of the Rules. It is clear that the Warrens failed to comply with the requirements of K.S.A. 60-226(b)(6) which requires a specific and detailed disclosure regarding Schukei and his anticipated testimony. The court could not have permitted the testimony of Schukei had the Warrens' nondisclosure about him and his testimony resulted in prejudice to Heartland.

When a plaintiff brings an action for damage to personal property, damages are measured by the cost of repair (plus reasonable compensation for plaintiff's loss of use while the property is being repaired) unless the repair costs exceed the value of the damaged property, in which case the plaintiff's damages are measured by the fair market value of the damaged property immediately before the loss. In either event, the fair market value of the property before the loss establishes a ceiling for damages. *Nolan v. Auto Transporters*, 226 Kan. 176, 183, 579 P.2d 614 (1979). Here, it was clear from the Warrens' initial interrogatory answers that they

based their claim on the cost of repair, not the value of the automobile before the loss. At trial, both sides proposed to instruct the jury, and the trial court did so, in accordance with PIK Civ. 3d 171.10 which sets forth this measure of damages.

Schukei testified to the fair market value of the Warrens' Isuzu before the engine failure. Heartland's own expert, Matt McGuire, testified that the fair market value of the Isuzu before the loss exceeded the cost of repairs. This testimony laid the groundwork for the damage calculation based upon the costs of repair. However, Schukei's testimony also had the effect of establishing a $17,500 ceiling for any damage award, since the jury was instructed that the repair costs and any damages for loss of use cannot exceed the value of the automobile before it was damaged. This ceiling was higher than the ceiling established in the testimony of McGuire, who opined that the Isuzu was worth $12,500 before the loss. The appropriate ceiling was significant only when the jury considered the Warrens' loss of use claim. As we will discuss later in this opinion, the ultimate outcome of the loss of use claim ameliorates any harm to Heartland from Schukei's testimony.

## 2. *Expert Qualifications*
### *-Schukei*

Heartland challenges the applicable expertise of Schukei, Basinger, and Herve. Pursuant to K.S.A. 60-456(b) they could render expert opinions only on matters that were within the scope of their special knowledge, skills, experience, or training.

Schukei's testimony was limited to his opinion of the fair market value of the Isuzu before the engine failure. Schukei testified from his experience of 29 years in the automobile sales business, including 8 years as an Isuzu dealer. Heartland's challenge goes to the weight to be given Schukei's testimony, not its admissibility. We do not reweigh the credibility of witnesses.

### *-Basinger*

Heartland challenges Basinger's testimony because he had no special skill or experience in diagnosing or repairing Isuzu vehicles. Basinger, the service manager at Schukei's dealership, testified that

the oil filter was loose and there was no oil in the pan when the Warrens' Isuzu was towed to the shop. This was fact testimony, not opinion testimony.

Next, Basinger testified that there should have been oil in the pan when he examined it because "the hole in the block is way above the pan. Even when it put the rods through the block, it ceases the engine immediately, so it shouldn't have pumped any oil out at that time." This comment on his observations seems more of a statement of the obvious, akin to the notion that water runs downhill, rather than an expert opinion. The gist of Basinger's comment was that an oil pump that is not running does not pump oil. The admission of this testimony does not constitute reversible error.

Basinger also testified that his job duties included estimating the cost of repairs. He opined that it would cost $8,000 or $9,000 for a new engine to be installed in the Isuzu. Basinger is not a mechanic. However, an auto dealership service manager with almost 6 years of experience, such as Basinger, does not need personal expertise in removing damaged engines and installing new ones in order to estimate the cost of repairs.

Finally, Heartland argues that Basinger should not have been allowed to testify there was no hole in the oil pan. Kohler, Heartland's expert, testified that there was a hole in the oil pan. Unlike in *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 631, 822 P.2d 591 (1991), cited by Heartland, Basinger did not offer an expert opinion on the cause of the loss. He merely recounted his observations about the condition of the vehicle after it arrived at the dealership, which required no particular expertise, and gave his opinion about the repair costs, which he was qualified to do. The trial court did not abuse its discretion in admitting Basinger's testimony.

### -Herve

Herve was a service technician with 12 years of experience at Schukei's dealership. He worked on automotive repairs in general and specialized in transmission repairs. Heartland argues that he was not trained on Isuzu engines, and that he did not perform an

adequate investigation into the cause of the engine failure. These arguments go to the weight of Herve's testimony and not to its admissibility. With respect to Herve's generalized experience in automotive repairs, Heartland does not explain what unique design is found in the Isuzu engine that distinguishes it from every other gasoline-powered internal combustion four-cycle automobile engine in use today, and how that unique design would affect its performance when operated without lubrication as compared to the performance of other engines. Herve's testimony was sufficiently within the scope of his expertise in automotive repairs in order to permit him to express an opinion of cause of the engine failure.

### Loss of Use

More troubling is the jury's award for loss of use. The jury awarded damages of $9,281 for the loss of use of the Warrens' automobile. Heartland claims there was insufficient evidence to support this award. In considering this claim we review the evidence in the light most favorable to the Warrens, the prevailing parties at trial. *Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90, 115-16, 883 P.2d 1120 (1994). When we do so, we only find evidence of the cost of (1) the engine repair, (2) the motel, (3) the tow, and (4) part of the rental car expense. The trial exhibits are not included in the record, so in examining the trial transcript we find only the following testimony regarding the Warrens' loss of use.

Shawn Warren testified that Exhibit 5, which was admitted into evidence, was an estimate from Enterprise in Mason City, Iowa, that their rental car would cost $250 plus $300 for Enterprise to return the car from Kansas City to Iowa after the Warrens' vacation. He also testified to the $55.50 bill for rental of a car they used while Schukei's dealership examined the Isuzu. He testified that upon their return to Kansas City and Heartland's denial of responsibility, they rented another car in order to drive back to Iowa to return the original rental car and to avoid Enterprise's additional $300 charge. There is no testimony regarding the cost of this second rental car. When asked how long he continued to rent a vehicle as a substitute for the Isuzu, Shawn Warren testified:

"We didn't. We basically relied on my wife's car and friends and family picking me up and taking me to work, 'cause my wife works in Olathe, I work downtown, so we just had to find a way until I purchased a get me by vehicle in July from a buyer pay lot to obviously get me back and forth to work."

Since the Warrens were at the auto dealership in Iowa City only for the day before continuing on their vacation journey, we conclude that the $55.50 bill was for a daily rental. The Warrens had a like expense for 2 additional days: one to drive back to Iowa City from Kansas City to return the rental car and another to return to Kansas City. This brings their out-of-pocket expense for a substitute vehicle to $416.50 ($250 + $55.50 + $55.50 + $55.50). The Warrens had no further car rental expense. They did not repair the Isuzu because they did not have the funds with which to do so. They ultimately purchased a substitute vehicle in July.

PIK Civ. 3d 171.10, which was used to instruct this jury, includes in the measure of damages the "reasonable cost of the repairs plus a reasonable amount to compensate for loss of use of the automobile while being repaired with ordinary diligence." It seems significant that the instruction does not refer to the cost of repairs and the cost of a substitute vehicle. Rather, it refers to the cost of repairs, a specific amount, and "a reasonable amount to compensate for loss of use," which appears to call upon the jury to determine a value for lost use from the totality of the evidence, without the need for plaintiff to have rented a substitute vehicle.

Surprisingly, there is no appellate decision in Kansas which addresses the recovery of damages for loss of use when plaintiff is without the use of the automobile but does not incur the expense of renting a substitute vehicle. We find the decision in *Cress v. Scott*, 117 N.M. 3, 868 P.2d 648 (1994), to be instructive. In *Cress*, the New Mexico Supreme Court held that (1) loss-of-use damages are not precluded merely because the automobile owner has not sustained actual rental cost, (2) reasonable rental value is the appropriate measure of damages in the absence of actual rental, and (3) loss-of-use damages should be limited to a reasonable period of time needed to make repairs.

Cress sued Scott for the negligent repair of his vehicle. When the defective repair work became apparent and the vehicle was

garaged for further repairs, Cress borrowed his daughter's vehicle, rode the city bus, or rode his bicycle to work until the repair work was done. He did not rent a substitute vehicle. Cress appealed the trial court's partial summary judgment against him on his claim for loss of use. On appeal, the court noted:

"In *Fredenburgh v. Allied Van Lines, Inc.,* 79 N.M. 593, 446 P.2d 868 (1968), a case involving the loss of use of furniture without actual rental of substitutes, this Court stated that, for the requisite showing with available accurate evidence, '[t]he measure of damages for the loss of use sustained is the rental value of property similar to that damaged for the time reasonably necessary to make repairs . . . or, if the property has no rental value, the value of its use to the deprived party for the time reasonably necessary to make repairs.' *Id.* at 600, 446 P.2d at 875 (citations omitted). The *Fredenburgh* holding does not require a plaintiff to prove actual rental to recover loss-of-use damages and, in fact, provides specifically for an award of loss-of-use damages when there is no actual rental. The *Fredenburgh* opinion is in accord with the rulings of many of our sister states. *See* Charles C. Marvel, Annotation, *Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed,* 18 A.L.R.3d 497, 528-32 (1968 & Supp.1993) (citing cases from California, Colorado, Florida, Kentucky, Louisiana, Mississippi, Missouri, New Jersey, New York, Ohio, South Carolina, Tennessee, Washington, and West Virginia that hold that a person need not prove actual rental to obtain loss-of-use damages). We today reaffirm that loss-of-use damages may be measured by the reasonable rental value of a substitute vehicle, even in the absence of actual rental.

. . . .

"The purpose of awarding loss-of-use damages is to provide reasonable compensation for inconvenience or monetary loss suffered during the time required for repair of damaged property. If an individual avoids the inconvenience by actually renting substitute property then the measure of damages is the actual cost of the substitute. As we have reaffirmed above, if the individual cannot avoid the inconvenience, for financial reasons or otherwise, that person still may recover reasonable compensation. Just as actual rental must be 'reasonable' . . . so too must 'rental value' be reasonable as a measure of loss-of-use damages in the absence of actual rental. The *Fredenburgh* opinion, however, offers no guidance in defining what factors should be considered in determining 'reasonable rental value.'

". . . The damages should be limited to the reasonable period of time needed to make repairs and this period should be extended only if the defendant causes or adds to any delay. . . .

"The fact that an individual has another vehicle available does not preclude that person from proving loss-of-use damages, though the inconvenience to that person may be shown to be less than if another vehicle was unavailable. If the substitute vehicle is provided gratuitously by a third party, however, the wrongdoer should

not benefit by such gratuitous aid. See *McConal Aviation, Inc. v. Commercial Aviation Ins. Co.*, 110 N.M. 697, 700, 799 P.2d 133, 136 (1990) (stating that the injured party, not the wrongdoer, should receive benefit of aid from a collateral source)." *Cress*, 117 N.M. at 6-7.

While we hold a jury's determination of damages in high esteem, while damages need not be established with absolute certainty, and while the jury can estimate damages by using a reasonable basis for computation and the best evidence available under the circumstances, damage claims that are conjectural and speculative cannot form a sound basis for an award. See *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 144, 815 P.2d 72 (1991); *Belot v. U.S.D. No. 497*, 27 Kan. App. 2d 367, 370-71, 4 P.3d 626 (2000).

The Warrens presented evidence to support an award of $415.50 for rental of a substitute vehicle. To award further damages for loss of use required the jury to engage in impermissible speculation. There was no evidence of the rental rate for a substitute vehicle. There is evidence of a daily rental rate in Iowa City, Iowa, of $55.50. We presume that a long-term rental would justify a lower rate. We do not know what that rate would be. Shawn Warren testified to a $250 expense for a rental car to complete his Minnesota vacation, but there is no evidence regarding the duration of the rental. We do not know from the testimony whether the $250 expense was for 1 week, 2 weeks, or some other duration. Further, there was no testimony from which the jury could determine the reasonable period of time the Warrens were without the use of the vehicle. Shawn Warren testified that he used other means of transportation until they bought a substitute vehicle in July. He did not specify when in July. If the jury decided that the purchase of a substitute vehicle ended the Warrens' loss of use, when was that? July 1, July 31? They were left to speculate. As noted in *Fredenburgh* and cited by the New Mexico court in *Cress*, "loss-of-use damages would not be allowed for inconvenience if plaintiff could provide evidence of reasonable rental value of similar property but fails to do so." *Fredenburgh v. Allied Van Lines, Inc.*, 593, 600, 446 P.2d 868 (1968).

Accordingly, we affirm the Warrens' judgment in all respects except for the loss of use claim. There is no substantial evidence

to support an award for this portion of the Warrens' damages in excess of $415.50. Therefore, we set aside the judgment and reverse this portion of the award and remand the case for entry of judgment in accordance with this opinion.